PARCHEN, APPELLANT, *v.* CHESSMAN, RESPONDENT.

(No. 3,737.)

(Submitted March 19, 1917.   Decided April 2, 1917.)

[164 Pac. 531.]

*Equity—Reformation of Instruments—"Mutual" Mistake—Renewal of Notes—Evidence.*

Appeal and Error—Law of the Case.
  1.  Where, on a prior appeal, the facts pleaded by defendant were held sufficient to warrant reformation of the note sued on, such holding became the law of the case, binding, on a subsequent trial or appeal, both upon trial and supreme courts.

Reformation of Instruments—Evidence—*Quantum* of Proof.
  2.  The rule that to warrant reformation of an instrument for mistake, the evidence must be clear, convincing and satisfactory, refers to the quality, rather than the quantity, of proof.

  [As to causes and proceedings for reformation of instruments, see note in 65 Am. St. Rep. 481.]

Same—Evidence—*Quantum* of Proof.
  3.  To warrant reformation of an instrument for mistake, it is not necessary that the mistake be made to appear beyond a reasonable doubt or by any *quantum* of proof beyond a bare preponderance (Rev. Codes, sec. 8028), which preponderance may be established by the testimony of a single witness as against a greater number of witnesses who testify to the contrary (sec. 7861).

Equity—Credibility of Witnesses.
  4.  In an equity case, the determination of the trial court on the credibility of a witness cannot be interfered with, unless his testimony is characterized by such inherent improbability as in effect to destroy it.

Reformation of Instruments—Bills and Notes—"Renewal."
  5.  An agreement for the "renewal" of a note means the substitution of another with the same substantive terms as the old, except as to date of payment and amount.

Same—Mistake of Scrivener—Evidence—Sufficiency.
  6.  Evidence *held* sufficient to warrant a finding that a mistake had been made, twenty-one years before date of trial, by a scrivener in drafting a renewal note so as to insert a clause waiving the benefits of the statute of limitations not a part of the original note.

Same—"Mutual" Mistake—Evidence.
  7.  To warrant the reformation of an instrument because of mistake in drafting it, it is not necessary that both parties go upon the witness-stand and admit that the mistake was mutual; where plaintiff asserts that no mistake was made, and defendant deposes to the contrary, the question is one of credibility and weight to be given to their testimony.

Same—Equity—Power to Decree Reformations.
  8.  Though, in a given case, a technical "mutual" mistake may not be presented to a court of equity, the mistake having been that of a scrivener in formulating the note sought to be reformed, it will nevertheless correct the writing so as to make it express the real agreement of the parties.

*Appeal from First Judicial District Court, Lewis and Clark County; John A. Matthews, Judge of the Fourteenth District, presiding.*

Action by Henry M. Parchen against William A. Chessman. Judgment for defendant and plaintiff appeals. Affirmed.

*Messrs. Galen & Mettler,* for Appellant, submitted a brief; *Mr. E. W. Mettler* argued the cause orally.

If there is but the unsupported oath of one of the parties to an instrument on one side and the opposing contradictory oath of the other party, together with the words of the instrument on the other side, such unsupported oath is not sufficient to justify reformation, and the evidence should not be submitted to the jury. (*Jackson* v. *Payne,* 114 Pa. St. 67, 6 Atl. 340.) The uncorroborated testimony of a single witness has also been held insufficient (*In re Sutch,* 201 Pa. St. 305, 50 Atl. 943); especially where the writing is corroborated by defendant's testimony and that of one witness. (*Jackson* v. *Payne,* 114 Pa. St. 67, 6 Atl. 340.) The failure of a complainant to call as a witness a disinterested person who was present and took part in the original negotiations weighs against his claim when the testimony is conflicting. (*Pope* v. *Hoopes,* 84 Fed. 927.) "The general rule is that to warrant the reformation of an instrument the evidence must be clear, convincing, and satisfactory." "Some courts go still further and hold that the proof must be beyond a reasonable doubt." (34 Cyc. 984, and notes 33, 34; *United States* v. *Munroe,* 5 Mason, 572, Fed. Cas. No. 15,835.) "Where the proof is confused, conflicting and contradictory, relief will not be granted." (34 Cyc. 983, and note 42.)

The defendant, in order to prove his case, was required to prove, not only that there was a mistake in the drawing up of the note, but also to prove, by clear, convincing and satisfactory evidence, that it was a mutual mistake. (34 Cyc. 988.) "In all cases it is necessary to make clear the mutuality of the mistake, as reformation is not the remedy for mistakes not partici-

pated in by both parties." (34 Cyc. 919, notes 95, 96.) A party will not be given relief against a mistake induced by his own negligence, as where he has failed to avail himself of means of knowledge of the facts. (16 Cyc. 69, notes 11, 12.)

*Messrs. Gunn, Rasch & Hall,* for Respondent, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

To warrant a reformation, in this state a preponderance of the testimony is sufficient. (*Gehlert* v. *Quinn,* 35 Mont. 451, 119 Am. St. Rep. 864, 90 Pac. 168; *Reid* v. *Hennessy Merc. Co.,* 45 Mont. 383, 123 Pac. 397.) In other states it is held that in suits to reform instruments the decision should be controlled by a preponderance of the evidence. (*Fitch* v. *Vatter,* 143 Mich. 568, 107 N. W. 106; *Panhandle Lumber Co.* v. *Rancour,* 24 Idaho, 603, 135 Pac. 558; *Conaway* v. *Gore,* 24 Kan. 389.)

The contract made in 1896 referred to the note provided for therein as a "renewal note." The note was to be in renewal of the note of 1894, which did not contain any waiver of the statute of limitations. The contract made in 1897, provided for "a new note," which both parties, according to their testimony, interpreted and understood to mean a renewal note. In the case of *Kedey* v. *Petty,* 153 Ind. 179, 54 N. E. 798, the court said: "'Renewed' or 'renewal,' as applied to promissory notes, in commercial and legal parlance means something more than the substitution of another obligation for the old one. It means to re-establish a particular contract for another period of time. It means 'to restore to its former conditions an obligation on which the time of payment has been extended' (Eng. Dict. 686); 'imparting continued or new force and effect' (And. Law Dict. 878); 'to make again' (2 Bouv. Law Dict. 876; *Daggett* v. *Daggett,* 124 Mass. 149, 151)." (See, also, *Lowry Nat. Bank* v. *Fickett,* 122 Ga. 489, 50 S. E. 396; *Koehler* v. *Hussey,* 22 Ky. Law Rep. 317, 57 S. W. 241; *Hay* v. *Star Fire Ins. Co.,* 77 N. Y. 235, 33 Am. Rep. 607.)

In 34 Cyc. 975, in note No. 53, we find the following: "Where mutual mistake was alleged, but the proof showed mistake of one

party and fraud of the other, plaintiff was held to be entitled to relief." (*McCormick Harvesting Mach. Co.* v. *Woulph,* 11 S. D. 252, 76 N. W. 939; *James* v. *Cutler,* 54 Wis. 172, 10 N. W. 147; see, also, *Holt* v. *Holt,* 120 Cal. 67, 52 Pac. 119.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to recover upon a promissory note dated December 26, 1897. The defendant prevailed in the lower court, and plaintiff has appealed.

The second defense interposed is to the effect that in 1893 the defendant executed and delivered to plaintiff his certain promissory note; that when such note became due in 1894 it was renewed by defendant executing and delivering to plaintiff another note; that in 1896 a third note was given in renewal of the second; and that in 1897 the note sued upon was given in renewal of the balance due upon the third note. It is further alleged that the note sued upon was prepared by a scrivener through whose mistake a clause was inserted which neither of the parties to the transaction ever intended should be included; that not any one of the three preceding notes contained the objectionable clause; that it was the intention and agreement of plaintiff and defendant that the note sued upon should be a renewal *pro tanto* of the note executed in 1896; and that it should be in the same form and of like tenor and effect as the preceding notes evidencing the same indebtedness. Upon a former appeal [1] (*Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631, 146 Pac. 469) we held that the facts pleaded in this second defense, if true, would warrant reformation of the note and make available the first defense. That decision became the law of the case binding upon this court as well as upon the court below. (*Yellowstone Nat. Bank* v. *Gagnon,* 25 Mont. 268, 64 Pac. 664; *Conway* v. *Monidah Trust,* 51 Mont. 113, 149 Pac. 711.)

The findings made by the trial court follow substantially the allegations contained in the defendant's second defense, and the

principal contention now made is that the evidence is insufficient to sustain such findings.

It is insisted that the testimony of the defendant in support of his affirmative defense is altogether uncorroborated, and that, if it is not absolutely necessary that it be corroborated, at least a court of equity should proceed with extreme caution in award-[2, 3] ing reformation of a written instrument upon the testimony alone of the party seeking such relief. We may agree with counsel that to warrant reformation the evidence must be clear, convincing and satisfactory; but this rule refers to the quality rather than to the quantity of proof. It is idle to refer to authorities which hold that to warrant reformation on the ground of mistake, the mistake must be made to appear beyond a reasonable doubt or by any *quantum* of proof beyond a bare preponderance. Whatever may be the rule in other jurisdictions, the question is set at rest in this state by statute. Section 8028, Revised Codes, declares that in a civil case the affirmative of the issue must be proved, and when the evidence is contradictory, the decision must be made according to the preponderance of the evidence. (*Gehlert* v. *Quinn*, 35 Mont. 451, 119 Am. St. Rep. 864, 90 Pac. 168.) Neither can it be questioned that the preponderance of the evidence may be established by the testimony of a single witness as against a greater number of witnesses who testify to the contrary; for section 7861, Revised Codes, declares that: "The direct evidence of one witness who is entitled to full credit is sufficient proof of any fact, except perjury and treason." (See *Story* v. *Maclay*, 6 Mont. 492, 13 Pac. 198; subd. 2, sec. 8028, above.) It was for the trial court [4] to determine the credibility of the defendant in the first instance, and, unless his testimony is characterized by such inherent improbability as in effect to destroy the testimony itself, this court will not interfere.

We find nothing improbable in the story told by the defendant; on the contrary, there were facts and circumstances corroborating his testimony which doubtless weighed in the estima-[5] tion of the court below. It is beyond controversy that the

note sued upon is one of a series of four notes given to evidence the same indebtedness. The first one was executed in 1893. In 1894 the second one was given in renewal of the first. In 1896 the third was given in renewal of the second, and finally the note sued upon was given in renewal of the third. As each note was superseded by a new one, the old note was surrendered to the defendant. Upon the trial defendant was unable to produce either the first or third note, but he did produce the second note, which disclosed that it did not contain the objectionable clause found in the one sued upon. If each succeeding note was intended to be a renewal of the preceding one, then every one of the notes should have contained the same substantive terms except as to amount and date of payment. In *Hay* v. *Star Fire Ins. Co.,* 77 N. Y. 235, 33 Am. Rep. 607, the court said: "An agreement to renew a policy implies that the terms of the existing policy are to be continued, and this would be so of any instrument, in the absence of evidence, that a change was intended."

"The word 'renewed' or 'renewal,' as applied to promissory notes in commercial and legal parlance, means something more than the substitution of another obligation for the old one. It means to re-establish a particular contract for another period of time, to restore to its former condition an obligation on which the time of payment has been extended." (7 Words and Phrases, 6084.)

"The word 'renew,' in a lease providing that the lessee shall have the right to renew the lease, imports a giving of a new lease like the old one, with the same terms, stipulations, and covenants." (4 Words and Phrases, 2d series, 267; *Leavitt* v. *Maykel,* 203 Mass. 506, 133 Am. St. Rep. 323, 89 N. E. 1056.)

With this second note in evidence tending so strongly to confirm the defendant's version of the transaction, it cannot [6] be said that the trial court was not justified in finding that a mistake was made in drafting the note sued upon; and this is particularly so in view of the fact that twenty-one years elapsed between the execution of the first note and the date of the trial,

and that these witnesses were compelled to rely upon their uncertain recollection of transactions the last of which occurred seventeen years before they testified.

It is further contended that, even though the evidence discloses that as to defendant there was a mistake made in inserting the objectionable clause, there is not any evidence of a mutual mistake, since plaintiff insists that the note correctly represents the agreement made at the time it was executed and delivered. We know of no rule of law which requires that each of these parties must come upon the witness-stand and admit that the writing does not correctly express their agreement, in order to prove that a mistake common to both was made in its execution. The fact that by a mistake a certain provision was incorporated which neither party intended should be included may be proved as any other fact, and if upon the whole case it appears that such a mistake was made, reformation may be authorized, even though one of the parties denies that any mistake whatever occurred. There is presented merely a question of the credibility of the witnesses and the weight to be given to their testimony.

It may be conceded that, if plaintiff and defendant mutually agreed that the note sued upon should be in the same form (excepting amount and date of payment) as the 1894 note, which was produced in evidence, and if the objectionable clause was inserted only through the mistake or inadvertence of the scrivener, there is not presented a *mutual mistake* on the part of plaintiff and defendant according to the strict legal significance of those terms, though such a mistake is frequently referred to as a mutual mistake by the authorities. "The phrase 'a mutual mistake' as used in equity, means a mistake common to all the parties to a written contract or instrument, and it usually relates to a mistake concerning the contents or the legal effect of the contract or instrument." (5 Words and Phrases, 4650; *Page* v. *Higgins,* 150 Mass. 27, 5 L. R. A. 152, 22 N. E. 63.)

It may be that the only issue presented where it is claimed the mistake occurred through the inadvertence of the scrivener is:

What was the language intended by both parties to be incorporated in the writing? But when the claim is made that by reason of the mutual mistake of the parties the instrument does not express their intention, "the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences." (Sec. 6110, Rev. Codes.) It is only in a very restricted sense, if at all, that it may be said that this defense presents a question of mutual mistake. It may possibly be said to be a mutual mistake in the same sense that, by defendant executing the note and plaintiff accepting it with the objectionable clause included, both are apparently made to do what neither intended to do, *viz.*, to agree upon a form of note which includes the clause in question. But in reality, if the testimony of defendant be accepted, there was not any mistake made by plaintiff or defendant. They agreed upon the terms of their contract and were not mistaken as to its meaning or as to the legal consequences to flow from it. It was only because of the mistake of the scrivener that the instrument does not correctly express the terms agreed upon.

When it is said by courts and text-writers that equity will [8] not lend its aid to reform an instrument for mistake unless it is a mutual mistake, the terms "mutual mistake" are used in contradistinction to a unilateral mistake or the mistake of one party to the instrument only. If the error occurs through the mistake of the scrivener, it is none the less a mistake, and, to the extent of it, the writing does not express the will of the parties. To that extent the instrument is not their contract, for it lacks the indispensable element of meeting of minds upon the same thing at the same time. To speak of enforcing a contract which never existed is a contradiction of terms.

But, though this case does not present a technical mutual mistake, it does present a mistake which a court of equity will not hesitate to correct to the end that the writing may express the agreement of the parties. (*Born* v. *Schrenkeisen,* 110 N. Y. 55, 17 N. E. 339; *West* v. *Suda,* 69 Conn. 60, 36 Atl. 1015; 34 Cyc. 910.)

It is not made certain by this record whether the plaintiff read the note sued upon before it was executed and accepted by him; but we do not deem it material if in fact he read the note before he received it and understood that it contained the objectionable clause.    Plaintiff's own testimony makes it clear that he had no agreement with defendant that the note should contain the particular clause in controversy.    The question before the trial court was: What were the terms upon which the parties agreed at the time of their agreement?    The discovery by one party after that time that the writing does not correctly express the agreement does not affect the agreement itself.

We have examined the other assignments, but do not think they merit special consideration.

The judgment is affirmed.

*Affirmed.*

MR. JUSTICE SANNER concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, did not hear the argument, and takes no part in the foregoing decision.

