HUMBLE, APPELLANT, v. ST. JOHN ET AL., RESPONDENTS.

(No. 5,609.)

(Submitted February 17, 1925. Decided March 16, 1925.)

[234 Pac. 475.]

*Reformation of Instruments—Deeds—Mistake—Evidence—Insufficiency—Equity—Findings—When Conclusive—Oral Admissions, to be Viewed With Caution, When.*

Appeal—Equity Cases—When Findings Conclusive.
    1. On appeal in equity cases the findings of the trial court will not be set aside unless there is a decided preponderance in the evidence against them.

Reformation of Instruments—Mistake—Evidence must be Clear.
    2. Before equity will intervene to correct an alleged mutual mistake in a written instrument, the evidence of the mistake must be clear, convincing and satisfactory.

Same—Evidence—Insufficiency.
    3. Evidence in an action to reform a deed on the ground of mutual mistake in inserting after the name of the grantee the words "and wife," *held* insufficient, under the above rule (par. 2), to warrant a holding that the trial court erred in finding against the plaintiff.

Oral Admissions to be Viewed With Caution Where Declarant Dead.
    4. Evidence of oral admissions must be viewed with caution, especially so where the party alleged to have made the admission is dead.

Reformation of Instruments—Construction of Deed.
    5. Where a bond for a deed ran to one grantee alone, and the deed was subsequently issued to him and his wife, a finding of the court in an action by the former to have the deed reformed by eliminating the words "and wife" some twelve years after the execution of the deed and after the wife had died, that the deed had been given "pursuant" to the bond did not compel the conclusion that, failing to conform to the preceding agreement, plaintiff was entitled to have it reformed, since the word "pursuant" may be used to mean "following," in which sense the court employed it, as indicated by other findings.

Appeal—Equity—Findings to be Construed as a Whole.
    6. Findings in an equity case must be construed as a whole.

Deeds—Parties may Abrogate Written Agreement by Subsequent One.
    7. The parties to an agreement may abrogate it by a subsequent one, and therefore may in a deed agree that it shall run to the purchaser "and wife" though in a bond for the deed it was provided that it should run to the purchaser alone.

    2. Reformation of instruments on ground of mistake, see notes in 30 Am. St. Rep. 621; 117 Am. St. Rep. 227.

*Appeal from District Court, Ravalli County; James M. Self, Judge.*

SUIT by Miller Humble against Henry J. St. John and others. Judgment for defendants and plaintiff appeals. Affirmed.

*Messrs. O'Hara & Madeen* and *Messrs. Murphy & Whitlock,* for Appellant, submitted a brief; *Mr. Robert A. O'Hara* and *Mr. A. N. Whitlock* argued the cause orally.

Citing: 23 R. C. L. 332; 34 Cyc. 923; *Courtright* v. *Courtright,* 6 Iowa, 356, 19 N. W. 255; *Hunt* v. *Rousmaniere's Admrs.,* 8 Wheat. (U. S.) 174, 5 L. Ed. 589 [see, also, Rose's U. S. Notes]; *Trenton Terra Cotta Co.* v. *Clay Shingle Co.,* 80 Fed. 46; *Stafford* v. *Fetters,* 55 Iowa, 484, 8 N. W. 322; *Reed* v. *Root,* 59 Iowa, 359, 13 N. W. 323; *Wolkau* v. *Wolkau,* 264 Ill. 510, 106 N. E. 461; *Miller* v. *Davis,* 10 Kan. 541; *Dunham* v. *Chatham,* 21 Tex. 231, 73 Am. Dec. 228; *O'Dell* v. *Browning,* 182 Iowa, 223, 165 N. W. 395; *Glass* v. *Bradford,* 159 Ky. 660, 167 S. W. 926; *Nichols* v. *Nichols,* 182 Ky. 18, 205 S. W. 953; *Root* v. *Snyder,* 161 Mich. 200, 126 N. W. 206; 18 C. J. 226; *Hennessy* v. *Holmes,* 46 Mont. 89, 125 Pac. 132; *Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631, 146 Pac. 469; *Brundy* v. *Canby,* 50 Mont. 454, 148 Pac. 315; *Cox* v. *Hall,* 54 Mont. 154, 168 Pac. 519.

*Messrs. Baggs & Kurtz* and *Mr. J. D. Taylor,* for Respondents, submitted a brief; *Mr. Taylor* argued the cause orally.

The main issue in the trial of the case was: Did the scrivener make a mistake in drawing the deed? On this question the burden was on the plaintiff to prove, by a clear preponderance of the evidence, that a mistake had been made; how it was made and that it was not due to his own negligence. The deed in question was in evidence and before the trial court and, keeping in mind the rule of law that the presump-

tion is that it contained the conclusion of all previous negotiations, and the final agreement of both parties, and that in itself was evidence of the° highest character, that it correctly expressed the intention of the parties to it, it was incumbent upon plaintiff to prove, by competent and sufficient evidence, that it did not correctly express the agreement of the parties to it. This, we reiterate, plaintiff failed to do. Certainly the evidence of the parties interested, after a lapse of more than twelve years, as to what their intentions were with reference to the deed, cannot by the greatest stretch of the imagination, be said to show, or even tend to show, that the scrivener made a mistake in preparing the deed. (See *Grantham* v. *Ordway,* 40 Cal. App. 758, 182 Pac. 73; *Reclamation Dist. No. 70* v. *Sherman,* 11 Cal. App. 399, 105 Pac. 277; *Burt* v. *Los Angeles Olive Growers' Assn.,* 175 Cal. 668, 166 Pac. 993; *Christopher & T. Street R. Co.* v. *Twenty-third Street R. Co.,* 149 N. Y. 51, 43 N. E. 538; *Campbell* v. *Hatchett,* 55 Ala. 548; *Grieve* v. *Grieve,* 15 Wyo. 358, 11 Ann. Cas. 1162, 9 L. R. A. (n. s.) 1211, 89 Pac. 569; *Kleinsorge* v. *Rohse,* 25 Or. 51, 34 Pac. 874; *Hyde* v. *Kirkpatrick,* 78 Or. 466, 153 Pac. 41, 488.)

HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, delivered the opinion of the court.

This action was brought to reform a deed on the ground of mutual mistake. It is alleged in the complaint that it was the intention of the parties in pursuance of a bond for a deed running to the plaintiff, Miller Humble, alone, that the deed should be made to the plaintiff as the sole grantee, but, due to the mistake and inadvertence of the scrivener and without the knowledge of the parties, it was made to "Miller Humble and wife." After trial judgment was rendered for defendants, from which the plaintiff appealed.

The appeal must fail if the evidence was sufficient to support the judgment. "On appeal in equity cases the

findings of the trial court will not be set aside unless there is a decided preponderance in the evidence against them." (*Scott* v. *Prescott,* 69 Mont. 540, 223 Pac. 490.) Such has been the uniform construction of the provisions of section 8805, Revised Codes of 1921. (*Delmoe* v. *Long,* 35 Mont. 139, 88 Pac. 778; *Kummrow* v. *Bank of Fergus County,* 66 Mont. 434, 214 Pac. 1098.)

Before equity will interfere to correct a mutual mistake in [2] a written instrument the evidence of the mistake must be clear, convincing and satisfactory. (*Parchen* v. *Chessman,* 53 Mont. 430, 164 Pac. 531; Wigmore on Evidence, sec. 2498; 11 Ency. of Evi., pp. 51–72; 23 R. C. L., p. 367.)

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this Chapter." (Sec. 7530, Rev. Codes 1921.) "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest no evidence of the terms of the agreement other than the contents of the writing, except in the following cases: (1) Where a mistake or imperfection of the writing is put in issue by the pleadings. (2) Where the validity of the agreement is the fact in dispute. * * * The term agreement includes deeds and wills, as well as contracts between parties." (*Id.* 10517.) "When through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded." (*Id.* 7531.) "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." (*Id.* 8726.) "In re-

vising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be. (*Id.* 8728.) "Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: (1) An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or, (2) Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed." (*Id.* 7485.)

It appears from the evidence the plaintiff and his wife, [3] Mary V. Humble, were married in 1887. They came to Montana in 1890. At that time neither had any property. They both worked for wages in the employ of his uncle, J. L. Humble, for eleven months, and she later for Marcus Daly. They bought a ranch and her wages were used in part for the purchase price. They sold the ranch and the money received on the sale in part paid for the land described in the deed involved in this action. This land was purchased for $12,000. Of this amount $8,000 was borrowed from J. L. Humble, who took the title in his name as security, giving the plaintiff a bond for a deed in which M. C. Humble, wife of J. L. Humble, joined. The loan of $8,000 was evidenced by a note signed by the plaintiff, and also by his wife. The plaintiff testified that his wife took no other part in any of the transactions. The deed is dated June 1, 1910, and acknowledged June 3, in Missoula county before Jas. M. Rhoades, a notary public, then residing at Missoula. It was recorded by the plaintiff June 4, 1910. The plaintiff and J. L. Humble testified that no instructions were given to have the words "and wife" written in the deed; that they did not know the deed contained the words; and that it was their intention that the land should be deeded to the plaintiff only. J. L. Humble testified that the deed was probably read to him. M. C. Humble, the wife of J. L. Humble, testified she signed the deed and that ended

it with her. She never gave it a thought any more. On direct examination she testified:

"Q. Well, I will ask you if you know anything about the words appearing in the caption of this deed, whereby it conveyed to Miller Humble and wife, if you ever heard or knew of that before? A. No; I never have; I never even saw the deed; I might have looked at the deed, but I just simply signed the deed, and that's all I know about it.

"Q. To whom did you understand the land was being conveyed at the time you signed the deed? A. Oh, yes; I knew it was being conveyed to Miller Humble; yes.

"Q. And to Miller Humble alone? A. Well, I don't remember about that part of it, now, but of course I know the transaction, that it was being conveyed to Miller Humble, and I don't know about Miller Humble and the wife—I don't remember about that part of it.

"Q. Was there anything said, in your recollection, about the conveyance going to or being made to Miller Humble and his wife? A. No; I never heard anything said at all.

"Q. About his wife? A. No; I never heard anything; Mr. Humble just said Miller wanted the deed, and we was to come down and sign it, and I come and signed it. I am in the habit, when Mr. Humble wants me to sign a deed or anything like that, I never question it, I never look at it; I suppose it would be more businesslike if I did, but I don't; if he tells me he wants me to sign anything, I sign it, and I risk the thing to him." J. L. Humble and Mrs. Humble testified by deposition.

Mary V. Humble died April 17, 1922. The defendants are her brothers, their wives, and her sister. The plaintiff stated that he first learned that the words "and wife" were in the deed in the fall of 1922. W. C. Angel, a witness for the defendants, testified that the plaintiff told him of the alleged mistake in the deed while they were planting potatoes in 1922; he thought it was in June. Anna McDonald testified for the

plaintiff that Mary V. Humble had told her the title to the land stood in her husband's name.

Among the court's findings are the following:

" (4) That the said Miller Humble, the plaintiff, accepted said deed, set out in Finding of Fact No. 3 and caused the same to be filed for record on the 4th day of June, 1910, and the same is now of record in volume 39 of Deeds, at page 559, records of Ravalli county, Montana, and that, during the twelve years which have elapsed since the plaintiff accepted said deed, neither the plaintiff, nor any one for him, has offered to return said deed or tender it back to the grantors, nor made any complaint as to its sufficiency, nor demanded any other, or different, or additional deed to correct any alleged mistake.

" (6) That the court finds from the evidence that the scrivener who made the said deed is unknown; that the place where the said deed was made is unknown; that the person who instructed the scrivener is unknown; that, if any instructions were given to the scrivener, those instructions are unknown; and how the deed came into the possession of said J. L. Humble and his wife for execution is unknown.

" (7) That the evidence generally is of a negative character and is insufficient to overcome the presumption indulged in favor of written instruments as evidence, and is too meager and conjectural to justify the substitution of parol evidence therefor to establish a mistake.

" (9) That the evidence is insufficient to justify a finding that the words 'and wife' were inserted in said deed set out in Finding of Fact No. 3 through mistake and inadvertence."

It cannot be said that the evidence in this case is either clear, convincing or satisfactory, as to the alleged mistake. Much less can it be said that the evidence clearly preponderates against the determination of the trial court. The evidence [4] as to the admission made by plaintiff's wife to witness McDonald is entitled to very little consideration. Evidencce of oral admissions are to be viewed with caution. (Sub. 4, sec. 10672, Rev. Codes 1921.) The reason for the rule is

more evident in the case of the death of the party alleged to have made the admission. It is significant that the living [5] parties to this transaction after the lapse of twelve years should have memories so keen as to their intentions and as to the matter of instructions to the scrivener, yet be unable to recall his name or any of the other circumstances attending the execution and delivery of the deed. The notary public who took the acknowledgment possibly could have thrown light on the transaction. He did not testify and his absence is not explained. It is strange that a person so recently without property should purchase a 200-acre ranch for $12,000; then after two years should finish paying for it and finally get a deed, then should record the deed without reading it or noticing that he was not the only grantee therein. There is a witness in this case that is not discredited by any fact or circumstance, has an unfailing memory and has no interest in the outcome of the case, and that is the deed. No suggestion arises from reading it that the parties had any intention other than that which it clearly expresses.

Plaintiff argues that the judgment is not supported by the [6, 7] findings, in that the court in finding No. 3, recited that the deed was given "pursuant" to the bond, meaning thereby that the deed was executed in accordance with the terms of the bond. His position is that, when a deed is so executed and it fails to conform to the preceding agreement in any particular, a court of equity will reform the deed accordingly, without further testimony. The findings must be construed as a whole. According to Webster's dictionary the word "pursuant" may be used to mean the same as the word "following." In view of the other findings of the trial court, the word was doubtless used in that sense. The parties could abrogate the prior written agreement by a subsequent one. (Sec. 7569, Rev. Codes 1921; *Hochstein* v. *Berghauser*, 123 Cal. 681, 56 Pac. 547; *Whitney* v. *Smith*, 33 Minn. 124, 23 N. W. 181; *Hubachek* v. *Brown*, 126 Minn. 359, 148 N. W. 121; *Koen*

v. *Kerns,* 47 W. Va. 575, 35 S. E. 902.)   A deed is such an agreement.   (Sec. 10517, Rev. Codes 1921.)

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS concur.