'AYERS, RESPONDENT, v. BUSWELL, APPELLANT.

(No. 5,695.)

'(Submitted May 23, 1925. Decided June 12, 1925.)'

[238 Pac. 591.]

*Reformation of Instruments—Mutual Mistake—Evidence—Sufficiency—Findings—When Conclusive on Appeal.*

Reformation of Instruments—Mistake—What Does not Warrant Relief.
   1.  In an action by the vendor of farm lands against the purchaser to reform, on the ground of mistake, the contract of sale under which he was bound to convey title by warranty deed in fee simple, free from all liens and encumbrances, so as to except the coal and mining rights reserved by the federal government in the patent issued to him, the fact that defendant may have had actual as well as constructive notice of the existence of the reservations does not warrant reformation.

Same—When Court of Equity will Grant Relief.
   2.  Where the parties to a contract agree upon the terms and conditions thereof, and through mistake the writing fails to express the agreement as made, a court of equity will reform it to make it express the terms actually fixed by the parties.

Same—Burden of Proof—Preponderance of Evidence may be Established by Testimony of One Witness.
   3.  The party seeking reformation of a contract on the ground of mistake has the burden of establishing his claim by a preponderance of the evidence, and such preponderance may be established by the plaintiff's own testimony as against that of a greater number of witnesses to the contrary.

Same—Mistake Involves Element of Negligence—When Neglect not Sufficient to Deny Relief.
   4.  The mere fact that a party seeking a reformation of an instrument on the ground of mistake may himself have been negligent is not a ground for refusing relief; but if the negligence is excusable, as where plaintiff is an old man and not accustomed to transact business and defendant a much younger man of extensive business experience, relief will be granted when, in view of all the circumstances, to deny it would permit plaintiff to suffer a gross wrong at the hands of defendant.

---

   1.  See 23 R. C. L. 349.
   2.  Reformation of instruments on the ground of mistake, see notes in 30 Am. St. Rep. 621; 117 Am. St. Rep. 227.
   Mutual mistake as ground for reformation, see note in 3 Ann. Cas. 444. See, also, 23 R. C. L. 320.
   3.  Sufficiency of evidence to warrant reformation of instrument on ground of mutual mistake, see note in 19 Ann. Cas. 343. See, also, 23 R. C. L. 365, 367.
   4.  See 23 R. C. L. 431.

[73 Mont. 518.]

Findings—When Conclusive on Appeal.

   5. In an equity case the supreme court will not interfere with the trial court's findings unless the evidence in its entirety preponderates decidedly against them.

Appeal and Error, 4 C. J., sec. 2867, p. 897, n. 82.
Reformation of Instruments, 34 Cyc., p. 907, n. 32, 33; p. 948, n. 58; p. 984, n. 31.

*Appeal from District Court, Custer County; Stanley E. Felt, Judge.*

SUIT by R. B. Ayers against Lewis Buswell. Judgment for plaintiff and defendant appeals. Affirmed.

*Mr. Frank Hunter,* for Appellant, submitted a brief and argued the cause orally.

The plaintiff in his pleadings urges that the defendant at the time of making the contract had knowledge of this defect. This the defendant denies; but in any event knowledge of a defect of title at the time of entering into a contract for the purchase and sale of real estate is immaterial. (*Newmyer* v. *Roush,* 21 Idaho, 106, Ann. Cas. 1913D, 433, 120 Pac. 464; *Fagan* v. *Walters,* 115 Wash. 454, 197 Pac. 635; *Joiner* v. *Ardmore Loan & T. Co.,* 33 Okl. 266, 124 Pac. 1073; *Winn* v. *Taylor,* 98 Or. 556, 190 Pac. 342, 194 Pac. 857; *Bell* v. *Stadler,* 31 Idaho, 568, 174 Pac. 129.)

It appears that the main point in the plaintiff's contention was that defendant having entered into an option contract and having made a layman's perusal of an abstract, and thereupon the defendant having "closed the deal," he thereby bound himself to accept whatever title the plaintiff had. The case most closely "on all-fours" with that contention and showing the same to be erroneous is *Craig* v. *White,* 187 Cal. 489, 202 Pac. 348.

Mistake: In the case of *Comerford* v. *United States F. & G. Co.,* 59 Mont. 243, 196 Pac. 984, 985, the court holds: "A mistake will not be relieved against unless the real intent of

the parties is satisfactorily shown, and unless the party seek-
ing the equitable relief is free from culpable negligence.
(23 R. C. L. 321.)'' In the Oregon case, *Dolph* v. *Lennon's
Incorporated,* 109 Or. 336, 220 Pac. 161, an effort was made
to reform a lease to provide against a subletting without
written consent. The court says: ''In the consideration of
a case of this kind it should be borne in mind that every
presumption is to be invoked in favor of the correctness of the
instrument written. It is important that the sanctity of
the written agreement be preserved. (23 R. C. L. 367, 368,
sec. 67.)''

*Mr. George J. Murphy, Mr. George W. Farr* and *Mr. R. B.
Graves,* for Respondent, submitted a brief; *Mr. Farr* argued
the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

This action was instituted to secure the reformation of
a contract and the specific performance of the contract as
reformed. The facts out of which the controversy arose are
briefly as follows:

In 1908 R. B. Ayers made entry upon public lands of the
United States including the south half of the southeast
quarter of section 22, township 9 north, range 55 east,
in Custer county, and in 1910 received a patent therefor,
which patent contained the following reservations: ''Reserv-
ing also to the United States all coal in the lands so granted
and to it or persons authorized by it, the right to prospect
for, mine and remove coal from the same upon compliance
with the conditions of and subject to the limitations of the
Act of March 3, 1909, 35 Stat. 844 [U. S. Comp. Stats., sec.
4665].'' For convenience this eighty-acre tract will be re-
ferred to hereafter as the ''government land.'' Ayers also
acquired title to all of section 23 in the same township and

range, consolidated the two parcels into one ranch, and improved and cultivated the same until late in 1909, when he returned to make his home at Sparta, Wisconsin, from which place he had come to Montana.

During the summer of 1916 Lewis Buswell came from his home at Kendall, Wisconsin, to this state, and while here had his attention directed to the Ayers ranch. On his return home, Buswell opened negotiations for the purchase of the ranch, with the result that he and Ayers entered into a memorandum in writing on October 7, 1916. Buswell then returned to Montana and made an examination of the ranch, and Ayers had an abstract of the title prepared which he delivered to Buswell on October 30 or 31. On November 13 Buswell went to Sparta for the purpose of completing the negotiations, and after some conversation he and Ayers repaired to the office of R. B. Graves, an attorney, where a formal contract for the purchase and sale of the Ayers ranch was prepared and signed by Ayers and his wife and by Buswell. The contract, as prepared and signed, contained the provision that Ayers and wife would "make, execute and deliver to said second party [Buswell], his heirs or assigns, upon demand therefor, a good and sufficient warranty deed in fee simple of the premises above described, free and clear of all liens and encumbrances, except taxes and unpaid purchase price hereunder."

Early in 1917 Buswell took possession of the ranch and continued in possession, cultivating and improving the same until August or September, 1922. He also made the payments on the purchase price from time to time up to and including January, 1921. On November 12, 1921, Buswell wrote to Ayers as follows: "My attorney advises me after looking over the abstract and my contract, that you are unable to give me a warranty deed in fee simple as it provides in my contract, for there are reservations in your title as shown by the abstract." Negotiations followed which failed

of their purpose, and on July 14, 1922, this action was commenced.

As ground for reforming the written contract of November 13, 1916, it is alleged that the agreement actually made by Ayers and Buswell was that Ayers and wife should convey the property to Buswell by warranty deed, free from and clear of all encumbrances, except taxes and the unpaid part of the purchase price and the coal and mining rights in the government land reserved in the United States by its patent; that is to say, that Buswell was to receive the same title to the government land that Ayers had received by the patent, but by the mutual mistake of the parties in having the terms of their agreement reduced to writing, the exception of coal and mining rights was omitted. Issues were joined and the cause brought to trial. The court called a jury, to which special interrogatories were submitted. The first and second of these only are material here and, with the answer to each, are as follows:

"(1) Was it the purpose and intention of plaintiff and defendant that plaintiff would convey to defendant the title to the premises referred to in this case as government lands subject to the government reservation of coal and coal mining rights as shown by the abstract delivered to defendant? Answer: Yes.

"(2) Did the written contract executed by the parties in this action upon November 13, 1916, contain all of the terms of the agreement between them? Answer: No."

The court adopted these findings and, in addition thereto, made somewhat elaborate findings of its own, all in favor of the plaintiff, and rendered and had entered a judgment reforming the contract and decreeing specific performance thereof as reformed. From that judgment defendant appealed.

As reformed by the court, the contract requires Ayers and wife "to make, execute and deliver to said second party [Bus-

well], his heirs or assigns, upon demand therefor, a good and sufficent warranty deed in fee simple, of the premises above described and free and clear of all legal liens and encumbrances except taxes and unpaid purchase price hereunder, *and except and subject to the coal and coal mining rights in and to the south half of the southeast quarter of section 22 in township nine north of range fifty-five east, Montana Meridian, reserved to the United States government by its patent dated December 15, 1910, and recorded on the 17th day of April, 1911, at five p. m. in Book X of Deeds at page 395 of the records of Custer county, Montana, under the Act of Congress of March 3, 1909.''* The change made consists of the addition of the italicized words, and the only question raised by this appeal is: Does the evidence justify the change?

The abstract furnished by Ayers disclosed the coal and mining reservations as they appear in the patent, and it is not disputed that Buswell had the abstract in his possession continuously from October 30 or 31, 1916, until February or March, 1922, and that he had examined it before November, 13, 1916.

We agree with counsel for defendant that the mere fact [1] that defendant may have had actual as well as constructive notice of the existence of the coal and mining reservations in the government land does not affect the contract or warrant reformation (*Key* v. *Vidovich,* 58 Cal. App. 710, 209 Pac. 375; *Bell* v. *Stadler,* 31 Idaho, 568, 174 Pac. 129), even though with full knowledge of the existence of such reservations he elected to close the deal and enter into the contract (*Craig* v. *White,* 187 Cal. 489, 202 Pac. 648). But it is apparent from the record, we think, that the trial court did not attach as much importance to the fact of defendant's knowledge as counsel seems to think was done. The writing of November 13, 1916, is only evidence of the agreement which the parties actually made and, though presump-

tively it correctly states the terms agreed upon (sec. 10517, Rev. Codes), the presumption is a disputable one.

For centuries courts of equity have exercised the right to [2] reform contracts on the ground of mistake and to make them represent truly the intentions of the parties. (2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 838 *et seq.*) In this state the subject is governed by statute. Section 8726 provides: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

In *Parchen* v. *Chessman,* 49 Mont. 338, Ann. Cas. 1916A, 681, 142 Pac. 634, this court said: "If the parties to a contract agree upon terms and conditions named by them, and through mistake the writing embodying the agreement signed by them, or either of them, fails to express the agreement as made, or includes therein terms and conditions not agreed upon, the result is that there is no contract between them. Under such circumstances a court of equity will reform the written evidence of the contract so as to make it express the terms of the agreement as actually fixed by the parties."

The testimony given upon the trial of this case covers nearly 300 pages of the record, and only the briefest reference will be made to the salient features of plaintiff's story. That story, as told by the plaintiff on the witness-stand, when reduced to its simplest terms, is to this effect: At the very inception of the negotiations Ayers informed Buswell of the coal reservations in the government land, and it was then agreed that Buswell would go to Montana and examine the ranch, and in the meantime Ayers would have an ab-

stract of the title prepared. Ayers said to Buswell: "If the abstract shows a title good enough so you think it is all right, you can have the property; otherwise you need not take it," and Buswell replied that he would examine the land and then the abstract and "decide whether it is satisfactory." After Buswell returned from examining the land, and on October 30 or 31, 1916, Ayers delivered the abstract, and Buswell said, "I want time to look it over and I want to submit it to my attorney." About November 4, Ayers received a letter in which Buswell wrote that he had examined the abstract, "but there is some parts which I want to talk to you about. You may have the rest of the papers made out so we can complete the deal." In response to this letter Ayers went to Kendall but was unable to see Buswell, who was absent. On November 13 Buswell went to Sparta, sought out Ayers, and after some conversation the two started for the office of Mr. Graves to have the contract prepared. On their way to the office, Ayers asked Buswell whether he had had his attorney examine the abstract, to which Buswell replied, "No, I have not; but it looks good enough for me anyway." It was understood throughout the negotiations that if the deal was completed, Ayers would convey, and Buswell would accept, such title to the government land as Ayers had received from the United States,—in other words, such title as was disclosed by the abstract. At the attorney's office Mr. Graves was asked to prepare the contract, and Ayers and Buswell gave him the description of the lands, stated the amount of the purchase price, the terms of the agreement, *etc.*, but neither mentioned the reservations in the government land. Ayers simply forgot to mention the matter and Buswell did not mention it. Mr. Graves testified that he assumed—not from anything said by either Ayers or Buswell, but rather from their silence—that they wanted the contract to provide for a warranty deed conveying perfect title, and he had his stenographer copy a printed form

of contract in general use in Wisconsin, which contained the provisions which appear in this writing. Ayers did not remember whether he read the contract before he signed it, or at all, until he received Buswell's letter of November 12, 1921. There are numerous facts and circumstances which tend to corroborate Ayers' testimony, and some which have the contrary effect; but after all is said that can be said, the plaintiff's case rests primarily upon the plaintiffs own testimony.

The function of the jury was to enlighten the chancellor, [3] and in the performance of that duty, to pass upon the credibility of the witnesses in the first instance. The court was not bound by the jury's findings, but was free to disregard them for any reason or without reason; but the fact that the court did adopt the jury's findings and made other findings of its own in harmony with them is ample evidence that the court as well as the jury accepted the plaintiff's testimony as true, despite the contradictory testimony of the defendant and his witnesses. The plaintiff, having pleaded the mistake, had to sustain the burden of proof, but the issue raised by the pleadings was to be determined by the preponderance of the evidence.

Upon the second appeal in the *Parchen-Chessman Case,* 53 Mont. 430, 164 Pac. 531, we said: "We may agree with counsel that to warrant reformation the evidence must be clear, convincing and satisfactory; but this rule refers to the quality rather than to the quantity of proof. It is idle to refer to authorities which hold that to warrant reformation on the ground of mistake, the mistake must be made to appear beyond a reasonable doubt or by any *quantum* of proof beyond a bare preponderance. Whatever may be the rule in other jurisdictions, the question is set at rest in this state by statute. Section 8208, Revised Codes [10672, Rev. Codes 1921], declares that in a civil case the affirmative of the issue must be proved, and when the evidence is contra-

dictory, the decision must be made according to the preponderance of the evidence."

It is true, as stated by defendant's counsel, that the only direct evidence that a mistake was made, and that it was mutual, is to be found in the testimony of the plaintiff, but, as said in the case last cited: "Neither can it be questioned that the preponderance of the evidence may be established by the testimony of a single witness as against a greater number of witnesses who testify to the contrary; for section 7861, Revised Codes [10505, Rev. Codes 1921], declares that: 'The direct evidence of one witness who is entitled to full credit is sufficient proof of any fact, except perjury and treason.'"

According to plaintiff's theory, the mistake consisted in the unconscious forgetfulness of a material fact, *viz.:* that the contract should contain a provision excluding the coal and mining rights in the government land.

It is suggested that plaintiff failed to make out a case [4] even upon the most favorable view of his own testimony, and *Comerford* v. *United States F. & G. Co.,* 59 Mont. 243, 196 Pac. 984, is cited to support the contention; but the decision in that case goes no further than to hold that "a mistake will not be relieved against unless the real intent of the parties is satisfactorily shown, and unless the party seeking the equitable relief is free from culpable negligence."

If the testimony of the plaintiff is to be believed, the intention of the parties was clear, and that intention is made known in terms sufficiently explicit that no one can be in doubt. It will not do to say that plaintiff's forgetfulness was the result of his own negligence and therefore he should be denied relief. At the time the contract was drafted, plaintiff was sixty-six years old and apparently had not been accustomed to transacting business of this character to any considerable extent, and he was dealing with a man twenty

years younger who for twenty-four years theretofore had been engaged in the real estate business. These were matters properly to be considered by the trial court in determining whether the plaintiff had presented a case which ought to appeal to the conscience of a chancellor. Furthermore, section 8726, Revised Codes, authorizes a court of equity to grant relief for mutual mistake, and every mistake involves the idea of negligence to a greater or less degree.

In *Brundy* v. *Canby*, 50 Mont. 454, 148 Pac. 315, this court said: "The term 'mistake' involves the conception that he to whom the fault expressed by it is imputed has been guilty of some degree of negligence which may or may not be excusable when viewed in the light of the circumstances of the particular case. Courts of equity are not bound by cast-iron rules. The rules by which they are governed are flexible and adapt themselves to the exigencies of the particular case. Relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other." To the same effect is *Cox* v. *Hall*, 54 Mont. 154, 168 Pac. 519. The trial court was not bound by the mere words employed by the plaintiff in his testimony to express the actual agreement of the parties. Section 8728, Revised Codes, declares: "In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be."

It is the rule in this jurisdiction that in an equity case [5] this court will not interfere unless it appears that the evidence in its entirety preponderates decidedly against the trial court's findings. (*Allen* v. *Petrick*, 69 Mont. 373, 222 Pac. 451; *Thomas* v. *Standard Dev. Co.*, 70 Mont. 156, 224 Pac. 870.) Upon a review of the record before us we are

satisfied that the findings made by the trial court are justified by the evidence.

The judgment is affirmed.

'*Affirmed.*

'ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.

MR. CHIEF JUSTICE CALLAWAY, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.

Rehearing denied July 6, 1925.