BITTER ROOT CREAMERY CO., APPELLANT, *v.* MUNTZER ET AL., RESPONDENTS.

(No. 6,756.)

(Submitted May 11, 1931.  Decided May 23, 1931.)

[300 Pac. 251.]

*Mr. John K. Claxton* and *Mr. George T. Baggs,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. H. D. Carmichael* and *Mr. H. M. Bingham,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff brought this action to recover on the following promissory note:

"$5,000.00                    Stevensville, Mont., March 1, 1928.

"One year after date, we or either of us promise to pay to the order of The Bitter Root Creamery Co. at The First State Bank of Stevensville, Montana, Five Thousand & no/100 Dollars, for value received, with interest at 8 per cent. per annum, payable semi annually from date until paid. In case of suit to recover hereon, a reasonable attorney's fee, to be fixed and allowed by the court, shall be taxed and collected as a part of the costs of action. The makers and endorsers hereby waive presentment, demand, protest and notice of dishonor; and sureties consent that time of payment may be extended without notice thereof. If any interest payment is not made promptly when due, then the principal, as well as the interest due shall immediately become due and payable.

"INDEPENDENT MILK AND CREAM COMPANY.
"HENRY MUNTZER,
"F. ACKERMANN."

The answer alleges that the note was by the parties to the action intended to be, and was in fact, the corporate note of the Independent Milk & Cream Company, and that through inadvertence and mutual mistake there was omitted the word "by" preceding, and the word "President" following, the name "Henry Muntzer," and the word "by" before, and the word "Secretary" after, the name "F. Ackermann." The prayer of the answer is that the note be reformed accordingly and the defendants dismissed, with costs. The trial was had to the court, resulting in findings and decree for the defendants, and plaintiff appealed.

The principal question presented is whether the evidence is sufficient to sustain the findings and judgment.

It appears from the record that plaintiff is a corporation engaged in business at Stevensville. Charles H. Buck was its general manager. The Independent Milk & Cream Company is a corporation, defendant Muntzer its president, and defendant Ackermann its secretary, and was engaged in business at Butte at the time the note was executed. As a result of business transactions between the two corporations, the latter company owed the plaintiff about $8,000 at the time the note was executed.

Ackermann testified that, upon advice of the Metals Bank & Trust Company, of Butte, he interviewed Buck relative to the indebtedness between the two companies with the view of facilitating a loan by the Independent Milk & Cream Company from the Metals Bank. This he did with the result, as he said, that Buck agreed to accept the Independent Milk & Cream Company's note in the sum of $5,000; that nothing was said relative to additional security or to an individual note of the defendants. He said he took the note back to Butte and stamped it with the corporation stamp, "Independent Milk & Cream Company," and signed his name to it, but inadvertently omitted the word "Secretary" after his name; that he thereafter had defendant Muntzer sign it as president, but that the word "President" was not written after his name.

Muntzer testified that the bookkeeper presented the note to him, and he signed it because he was president of the company; that he did not intend to sign it as an individual; that he did not read the note; that Ackermann requested him to sign it in order that the loan from the bank could be obtained; he admitted that nothing was said as to how he was signing the note.

Ralph Place, cashier of the Metals Bank & Trust Company, testified that the Independent Milk & Cream Company was negotiating for a loan from the bank; that Ackermann advised him of the indebtedness to the Bitter Root Creamery Company, and stated to him that the latter company would accept a note from the Independent Milk & Cream Company and carry it for a year, and would not require the Independent Milk & Cream Company to pay to it any of the money sought to be borrowed by the Independent Milk & Cream Company from the bank; that in confirmation of this statement he telephoned to Buck, and the latter stated to the witness that the note of the Independent Milk & Cream Company for $5,000 would be accepted for one year, and nothing was said about any individual indorsement; that he requested a telegram from Buck to confirm the statement, and received the following telegram, which was sent on February 28, 1928:

"Metals Bank and Trust Co.,

"Butte, Mont.

"Understand Independent Milk and Cream Company your city propose to borrow from Metals Bank Twenty Thousand Dollars to pay debts and mortgage all of its property real and personal to secure loan with interest and will assign to bank monies to be paid in event of fire to its plant; also understand the Bitter Root Cooperative Creamery Company is not to receive any portion of this money so borrowed. We are fully advised as to the proposed plan and consent thereto.

"BITTER ROOT COOPERATIVE CREAMERY CO.

"By CHARLES H. BUCK,

"Business Manager."

Also on February 25 Buck sent a letter to the bank as follows:

"Bitter Root Co-operative Creamery Co.

"Stevensville, Mont. Feb. 25, 1928.

"Metals Bank & Trust Co.,

"Butte, Montana.

"Gentlemen: We wish, at this time, to explain our situation with the Independent Milk & Cream Co. with reference to our account with them. In making a statement to you over the 'phone a few days ago of their indebtedness to us we erred in the amount due us on Dec. 31st. At that time we had a couple of their checks out for collection and which were not credited on their account until later and with these two checks it would have reduced their balance to about $4,550 and with other payments would reduce their Feb. balance to $7,000 mark. We think that we understand the situation that the Independent Co., are in at this time and are willing to accept their note on 1 year's time for approximately $4,900, this will put them on a 10 day basis with us and leave them, from their loan with you, enough cash in the bank to meet these 10 day accounts. Should they have, at any time, a surplus on hand we would gladly accept same to apply on note, however will not crowd them on the note. Trusting the above explanation as to our position with them will meet with your approval, we beg to remain,

"Very truly yours,

"CHAS. H. BUCK,

"Business Manager."

Charles H. Buck, on behalf of plaintiff, testified that he agreed to accept an individual note of the defendants, and that defendant Ackermann agreed that, if he could get defendant Muntzer to sign the note, he would do so, and that he would pay the difference in the account due to plaintiff over and above the amount of the note; that this agreement was made at Stevensville in February, 1928, where the defendant Ackermann met the witness for the purpose of talking the matter over; that about two weeks later the note, in the form

above shown, was returned to Stevensville; that the witness had prepared the note and sent it to Ackermann; that previously other individual notes of defendants had been handled in the same manner; that, while the negotiations were pending for the procurement of this note, the Independent Milk & Cream Company was attempting to obtain a loan from the Metals Bank & Trust Company, of Butte; that, at the instance of Ackermann, he sent the telegram of February 28; and that about the time that Ackermann interviewed him at Stevensville with reference to this transaction the witness, at the instance of Ackermann, wrote the letter of February 25.

George T. Baggs, an attorney at law representing the plaintiff in attempting to collect the account due it from the Independent Milk & Cream Company, testified that he went to Butte about the middle of February and interviewed Ackermann; that he demanded, and was promised by Ackermann, a note signed by Muntzer and Ackermann; that he would not accept a company note, and nothing was said regarding the execution of a corporate note.

A written contract which through mutual mistake does not truly express the intention of the parties may be re-formed. (Sec. 8726, Rev. Codes 1921.) And this applies to a promissory note executed by the officers of a corporation for a debt of the company but by mutual mistake made their own obligation instead of the company's. (34 Cyc. 935.)

In order to justify the reformation of a contract on the ground of mutual mistake, the evidence relied upon must be clear, convincing, and satisfactory. (*Humble* v. *St. John,* 72 Mont. 519, 234 Pac. 475; *Parchen* v. *Chessman,* 53 Mont. 430, 164 Pac. 531, 532.) And, "if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief, upon the ground that the written paper ought to be treated as a full and correct expression of the intent until the contrary is established beyond reasonable controversy." (*Fitschen* v. *Thomas,* 9 Mont. 52, 22 Pac. 450, 453.)

In the answer sworn to by Ackermann, it is alleged that, ▉ at the time the note was delivered to him for signature, it had written thereon the words "Independent Milk & Cream Company." He testified: "I took the note back with me and stamped it with our corporation name, Independent Milk & Cream Company." He also testified that the statement in the answer is correct. Plaintiff contends that, since a witness false in one part of his testimony is to be distrusted in others, his entire testimony should be disregarded because of these contradictory statements. But the duty of passing upon the weight of the evidence and the credibility of the witnesses rested with the trial court. The district judge was at liberty to believe the other evidence given by Ackermann, and was not obliged to disregard his entire evidence. Furthermore, the witness Place corroborated Ackermann in the material parts of his testimony. "The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact, except perjury and treason." (Sec. 10505, Rev. Codes 1921; *Parchen* v. *Chessman*, supra.) Here, if the evidence offered ▉ by and on behalf of defendants is true, it justified reformation of the note; for, though plaintiff's witnesses denied that there was any mistake on their part, defendants' witnesses asserted, in effect, that the mistake was mutual. In *Parchen* v. *Chessman*, supra, the court commented upon a like situation, as follows: "We know of no rule of law which requires that each of these parties must come upon the witness stand and admit that the writing does not correctly express their agreement, in order to prove that a mistake common to both was made in its execution. The fact that by a mistake a certain provision was incorporated which neither party intended should be included may be proved as any other fact, and if upon the whole case it appears that such a mistake was made, reformation may be authorized, even though one of the parties denies that any mistake whatever occurred. There is presented merely a question of the credibility of the witnesses and the weight to be given to their testimony." The duty of passing upon the weight of the evidence and the credibilty of the witnesses was

the exclusive province of the trial judge who saw the witnesses and observed their demeanor and conduct.

The evidence on behalf of defendants is not so inherently improbable as to justify us in saying that the court erred in believing it, or to warrant us in holding that the findings and judgment are opposed to the decided preponderance of the evidence. What was said in *Cox* v. *Hall*, 54 Mont. 154, 168 Pac. 519, 521, expresses our views here. There it was said: ''To us, out of the presence and hearing of the witnesses, it appears that the court below might well have reached a different result; but it would be a gross perversion to say that the findings and decree are without substantial evidence to support them.''

Error is assigned in overruling plaintiff's exception to findings by the court that the note is the obligation of the Independent Milk & Cream Company. Whether the note is a corporate obligation is not properly an issue in this case. If it was intended by the parties to be a corporation note and not the individual note of defendants, that is sufficient to warrant its reformation in the manner sought. Since the findings complained of relate to an immaterial issue, they do not furnish grounds for reversal of the judgment, even though it be assumed that they are not supported by evidence. (*Vreeland* v. *Edens*, 35 Mont. 413, 89 Pac. 735.)

Plaintiff also contends that defendant Muntzer ought not to be permitted to have the note reformed as to him, since the evidence shows that he was negligent in not reading the note before signing it. ''Every mistake involves the idea of negligence to a greater or less degree.'' (*Ayers* v. *Buswell*, 73 Mont. 518, 238 Pac. 591, 594.) And, if the negligence consists of failing to read the document involved, and is excusable under the circumstances, and no rights of innocent third parties are involved, reformation may be had. (*Parchen* v. *Chessman*, 49 Mont. 326, Ann. Cas. 1916A, 681, 142 Pac. 631; *Ayers* v. *Buswell*, supra; *First State Bank of Philipsburg* v. *Mussigbrod*, 83 Mont. 68, 271 Pac. 695.) Muntzer, the evidence shows, was of foreign extraction, and could not read much. The court was justified in excusing his negligence, if

such it be, in failing to read the note, if otherwise satisfied that the note was signed by him individually through mistake. It should be noted, however, that no attempt is made in this case to reform the body of the note. Had Muntzer read the note, it does not follow that he would not have signed it in the manner in which he did. In other words, it is doubtful whether his failure to read the note had anything to do with signing it in the manner in which it was signed.

It is further contended by plaintiff that the answer does not state facts sufficient to warrant a decree of reformation, in that it is not alleged that the parties can be restored to the position occupied by them at the time the note was made. It is contended that, since the evidence shows the Independent Milk & Cream Company is in the hands of a receiver, it affirmatively appears that restoration is impossible. This is not one of the elements necessary to be alleged and proven in a case seeking the reformation of a contract because of mutual mistake. The right of reformation exists so long as the rights of innocent third persons are not prejudiced. (See sec. 8726, Rev. Codes 1921.) The answer alleges facts sufficient to warrant a decree for reformation.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES FORD and MATTHEWS and HONORABLE HENRY G. RODGERS, District Judge, sitting in place of MR. JUSTICE GALEN, disqualified, concur.