## Case No. 11,329.
### POTTER et al. v. HOLLAND.
[1 Fish. Pat. Cas. 327; 4 Blatchf. 206.] [1]

Circuit Court, D. Connecticut.   Sept., 1858.

PATENTS—RIGHT TO SURRENDER—JOINT OWNERSHIP—"ASSIGNEE"—"GRANTEE"—"LICENSEE"—RIGHTS OF THIRD PERSONS.

1. The sole right to surrender letters patent is given (1) to the patentee, if he is alive, and

_____

[1] [Reported by Samuel S. Fisher, Esq., and by Hon. Samuel Blatchford, District Judge, and here compiled and reprinted by permission. The syllabus and opinion are from 1 Fish. Pat. Cas. 327, and the statement is from 4 Blatchf. 206.]

has made no assignment of the original patent; (2) to the executors or administrators of the patentee after his decease, where there has been no such assignment; (3) to the assignee where there has been an assignment of the original patent.

2. Where, however, there has been an assignment of an undivided part of the whole original patent, in such a case, the assignee of such a part, and the patentee, become joint owners of the patent, and should join in the surrender, and if they do not, it will be invalid, unless the part owner, not joining, shall ratify it.

3. There are three classes of persons in whom the patentee can vest an interest of some kind in the patent. They are, an assignee, a grantee of an exclusive sectional right, and a licensee.

4. An assignee is one who has transferred to him, in writing, the whole interest of the original patent, or any undivided part of such whole interest, in every portion of the United States.

[Cited in Meyer v. Bailey, Case No. 9,516; Clement Manuf'g Co. v. Upson & Hart Co., 40 Fed. 472.]

5. A grantee is one who has transferred to him, in writing, the exclusive right (excluding the patentee as well as others), under the patent, to make and use, and to grant to others to make and use, the thing patented within and throughout some specified part or portion of the United States.

[Cited in Perry v. Corning, Case No. 11,004; Meyer v. Bailey, Id. 9,516; Clement Manuf'g Co. v. Upson & Hart Co., 40 Fed. 472; Rice v. Boss. 46 Fed. 196.]

6. A licensee is one who has transferred to him, in writing or orally, a less or different interest than either the interest in the whole patent, or an undivided part of such whole interest, or an exclusive sectional interest.

[Cited in Clement Manuf'g Co. v. Upson & Hart Co., 40 Fed. 472; Jones v. Berger, 58 Fed. 1,007; Union Switch & Signal Co. v. Johnson R. Signal Co., 10 C. C. A. 176, 61 Fed. 944.]

7. A mere licensee can not bring an action at law for the violation of a patent.

[Cited in Nelson v. McMann. Case No. 10,109; Wilson v. Chickering, 14 Fed. 918.]

8. The terms, "assignee" and "grantee," are not used in the patent law of 1836 [5 Stat. 117], as synonymous terms, though courts, without having their attention particularly called to the subject, have sometimes used them indiscriminately and in their popular sense.

[Cited in Moore v. Marsh, 7 Wall. (74 U. S.) 521.]

9. It is not in the power of the patentee, by a surrender of his patent, to affect the rights of third persons, to whom he had previously passed his interest in the whole or a part of the patent without their consent.

[Quoted in Potter v. Braunsdorf, Case No. 11,321.]

10. This consent may be manifested, either by joining in the surrender with the patentee, or by previously authorizing it, or by subsequently ratifying or approving it.

11. A person, to whom the patentee has passed his interest in a part of the old patent, upon the surrender of the same by the patentee, and obtaining a reissued patent, is entitled to the same right under the reissued patent that he had to the old one.

[Quoted in Potter v. Braunsdorf, Case No. 11,321. Cited in Campbell v. James, Id. 2,361.]

12. He may, however, elect to hold under the old patent, and it is not a valid objection that in such event there would be different claims of right in the same invention secured to different sectional owners.

[Cited in Sickles v. Evans. Case No. 12,839; McComb v. Brodie, Id. 8,708; Burdsall v. Curran. Fed. 919.]

13. Under section 7 of the act of 1837 [5 Stat. 193] the owner of a sectional interest may make a disclaimer for his sectional interest, which is to be taken as a part of the original specification for the section owned by him, and to no greater extent.

14. After such disclaimer a different claim of right is secured to the disclaimant, the owner of a sectional interest, from what is purported to be secured to the patentee, the owner of the remaining interest.

In equity. This was an application for a provisional injunction. The bill set forth, that, on the 12th of November, 1850, letters patent [No. 7,776] were granted to Allen B. Wilson, for an "improvement in sewing machines;" that, on the 26th of November, 1850, Wilson, by an assignment in writing, sold and assigned to Aaron P. Kline, three undivided fourth parts of the invention and patent, except the right to construct, use, and sell the invention in the state of New Jersey, and the right to use the invention for sewing leather in the state of Massachusetts; that, on the same day, Wilson, by an assignment in writing, sold and assigned one undivided fourth part of the invention and patent to Elisha P. Lee, except the right to construct, sell and use the invention in the state of New Jersey, and the right to use the improvement for sewing leather in the state of Massachusetts; that Lee, on the 6th of May, 1851, sold and assigned to Joseph N. Chapin, one undivided sixth part of all his right, title and interest in the patent and invention, excepting the states of Indiana, New Hampshire, Vermont, Virginia, California, Mississippi, Louisiana, Wisconsin, and Oregon; that Lee, on the 6th of May, 1851, by an assignment in writing, sold and assigned to said Kline, five undivided sixth parts of all his right, title, and interest in and to the patent and invention, excepting the last-mentioned states; that Chapin, on the 19th of May, 1851, by an assignment in writing, sold and assigned to said Kline, all his right, title and interest in the patent and invention, except the right thereto in and for the state of New Jersey; that Kline, on the 9th November, 1854, by an assignment in writing, sold and assigned to Nathaniel Wheeler, one of the plaintiffs, all his right and interest to the patent and invention; that, in November, 1855, Wheeler, and Orlando P. Potter, sold and assigned to said Wilson all their right and interest in the patent and invention; that, subsequently, Wilson surrendered the patent to the patent office, and obtained a reissued one for the same invention, upon an amended specification; and that such reissued patent had been assigned to the plaintiffs by Wilson, by an assignment which conveyed his whole interest in the patent and invention. On the hearing of the motion for the injunction, a preliminary objection was

taken by the defendants [Goodrich, Holland and others] to the validity of the reissued patent, on the ground that it did not appear by the bill, either that Lee joined Wilson in surrendering the original patent, or authorized Wilson to surrender it, or ratified the surrender after it had been made. This objection was argued and considered by itself.

Roger S. Baldwin, Ralph I. Ingersoll, and George Gifford, for plaintiffs.

James T. Brady and Edward N. Dickerson, for defendants.

Before NELSON, Circuit Justice, and INGERSOLL, District Judge.

INGERSOLL, District Judge. It is stated in the bill, that Chapin, in his transfer to Kline, excepted from its operation the right which he had in the state of New Jersey. But the bill shows that he never had any right in the state of New Jersey. He only took a portion of the right, which had been transferred to Lee; and Lee never had transferred to him any right of any kind for that state. The bill therefore shows that when the surrender was made, and the reissued patent was obtained, no one had any interest of any kind in the old patent, except Wilson and Lee.

Exception is now taken to the validity of the reissued patent, upon which the sufficiency of the bill depends, for the reason, as is alleged, that the surrender of the old one was not lawfully made. To make that surrender lawful, it is claimed that Lee should have joined Wilson in making it, or should have authorized Wilson to make it, or should have ratified the surrender after it had been made by Wilson; and as the bill does not show either that Lee joined Wilson in making the surrender, or authorized him to make it, or ratified it after it was made, that it must be held that the surrender was not lawfully made, and consequently that the reissued patent was not legally issued, and is therefore void. There being no other objection to the reissued patent, it will follow, if the surrender of the old one was lawfully made, that that patent was legally issued.

In the 13th section of the patent law of 1836, is contained all the right to make a surrender. By that section it is provided, "that whenever any patent which has heretofore been granted, or which shall be hereafter granted, shall be inoperative or invalid, by reason of a defective or insufficient description or specification, or by reason of the patentee claiming in his specification, as his own invention, more than he had or shall have a right to claim as new, if the error has or shall have arisen, by inadvertency, accident, or mistake, and without any fraudulent or deceptive intention, it shall be lawful for the commissioner, upon the surrender to him of such patent, and the payment of the further duty of fifteen dollars, to cause a new patent to be issued to the said inventor, for the same invention, for the residue of the period, then unexpired, for which the original patent was granted, in accordance with the patentee's corrected description and specification. And in case of his death, or any assignment by him made of the original patent, a similar right shall vest in his executors, administrators, or assignees."

The sole right to surrender is given (1) to the patentee, if he is alive, and has made no assignment of the original patent; (2) to the executors or administrators of the patentee, after his decease, when there has been no such assignment; (3) to the assignee, when there has been an assignment of the original patent. And the right to surrender is given to no one else. Where, however, there has been an assignment of an undivided part of the whole original patent, in such a case, the assignee, of such a part, and the patentee, become joint owners of the patent, and should join in the surrender; if they do not, it will be invalid, unless the part owner, not joining, should ratify it. If Lee, therefore, was not an assignee of the original patent, or an assignee of an undivided part of the original patent, within the meaning of the terms assignee and assignment, as they are used in the patent law, then it will follow that he had no legal right, as assignee, to surrender, and that the surrender by Wilson, without his concurrence, was valid. If he was such assignee, then the surrender was invalid. It is therefore necessary to determine what is meant by the terms assignee of the original patent, and assignment of the original patent, as they are used in the patent law. An assignment, as understood by the common law, is a parting with the whole property. 2 Black, 326. The 4th section of the patent act of 1793 [1 Stat. 322] provides "that it shall be lawful for any inventor, his executor or administrator, to assign the title or interest in the said invention, at any time; and the assignee, having recorded the said assignment in the office of the secretary of state, shall thereafter stand in the place of the original inventor, both as to right and responsibility, and so the assignees of assignees to any degree." Under that law it was held, in the case of Tyler v. Tuel, 6 Cranch [10 U. S.] 324, that a transferee of all the right secured by a patent excepting in the counties of Chittenden, Addison, Rutland, and Windham, in the state of Vermont, was not an assignee within the meaning of the law. He was merely a grantee of a sectional interest, without power to sue at law. By that act the right to bring a suit at law was confined to the patentee and assignee. It was held, however, in the case of Whittemore v. Cutter [Case No. 17,600], that a transferee of an undivided part of the whole patent was an assignee, entitled to join the patentee in a suit. It was thus held that no one was an assignee, unless the whole property in the patent, or an undivided part of such whole property, had been passed to him.

The power of the patentee as it now exists to make an assignment of the patent, and to create other interests in it, is contained in the 11th section of the patent law of 1836. That section is as follows: "Every patent shall be assignable in law, either as to the whole interest, or any undivided part thereof, by any instrument in writing; which assignment, and also every grant and conveyance of the exclusive right under any patent to make and use, and grant to others to make and use, the thing patented within and throughout any specified part or portion of the United States, shall be recorded in the patent office, within three months from the execution thereof, for which the assignee or grantee shall pay to the commissioner the sum of three dollars." And the 14th section authorizes suits at law to be brought in the name of the persons interested, whether as patentees, assignees, or grantees of the exclusive right within and throughout a specified part of the United States. A mere licensee can not bring an action at law for a violation of the patent.

There are three classes of persons in whom the patentee can vest an interest of some kind in the patent. They are an assignee, a grantee of an exclusive sectional right, and a licensee. An assignee is one who has transferred to him in writing the whole interest of the original patent, or an undivided part of such whole interest in every portion of the United States. And no one, unless he has such an interest transferred to him, is an assignee. A grantee is one who has transferred to him in writing the exclusive right, under the patent, to make and use, and to grant to others to make and use, the thing patented, within and throughout some specified part or portion of the United States. Such right must be an exclusive sectional right excluding the patentee therefrom. A licensee is one who has transferred to him, in writing or orally, a less or different interest than either the interest in the whole patent, or an undivided part of such whole interest, or an exclusive sectional interest.

Does the bill, therefore, show that Lee had ever transferred to him the whole interest in the original patent, or an undivided part of such whole interest in every portion of the United States? It appears, by the bill, that no such interest was transferred to him. The interest transferred to him was an undivided part of the patent, in a part and portion of the United States, not the whole patent, nor an undivided part of the whole patent, in every part and portion of the United States. No interest was conveyed to him for the state of New Jersey. He had no interest in the patent for sewing leather in the state of Massachusetts. He never was, therefore, an assignee of the original patent, within the meaning of the patent law of 1836, nor would he have been an assignee within the meaning of the patent law of 1793.

The terms "assignee" and "grantee" are not used in the patent law of 1836 as synonymous terms, though courts, without having their attention particularly called to the subject, have sometimes used them indiscriminately, and in their popular sense. They have, however, the separate and distinct meanings above indicated. But if they were used in the law as synonymous terms, and if a grantee of an exclusive sectional interest were an assignee, it would not aid the defendant in the exception that has been taken. For Lee was neither an assignee, nor such grantee, but a licensee merely, having no legal rights in the patent.

It appears clearly by the case of Gaylord v. Wilder, 10 How. [51 U. S.] 477, that his interest was an interest only of the latter description. Chief Justice Taney, in giving the opinion of the court in that case, on page 494, says: "The patentee may assign his exclusive right, within and throughout a specified part of the United States, and upon such an assignment, the assignee may sue in his own name for an infringement of his rights. But in order to enable him to sue, the assignment must undoubtedly convey to him the entire and unqualified monopoly which the patentee had in the territory specified, excluding the patentee himself, as well as others. And any assignment short of this is a mere license."

The action in that case was in favor of the patentee. It was for a violation of the rights granted by the patent. Previous to the commencement of the suit, there had been a contract entered into between the patentee and one Herring, which purported to grant to Herring the exclusive right to make and vend the Salamander safe in the city, county, and state of New York. By the contract, Herring agreed to pay the patentee one cent a pound for every pound the safe might weigh, to be paid monthly. There was reserved to the patentee the right to set up a manufactory, or works, for making these safes, in the state of New York, provided it was not within fifty miles of the city, and to sell them in the state of New York, paying Herring one cent a pound on each safe so sold within the state. The court, on page 495, say, "It is evident that this agreement is not an undivided interest in the whole patent, nor the assignment of an exclusive right to the entire monopoly in the state or city of New York. It is to be regarded, therefore, as a license only; and under the act of congress, does not enable Herring to maintain an action for an infringement of the patent right. The defendant in error (the patentee) continues the legal owner of the monopoly created by the patent." In the case now before the court, there was no transfer of an undivided interest in the whole patent, nor the exclusive right to the entire monopoly in any specific territory, excluding the patentee from all right in such specific territory. And the language of the court is, that "any assignment short of this is a mere license." It

conveys no legal right in the patent. Notwithstanding the transfer to Lee, Wilson continued "the legal owner of the monopoly created by the patent."

It has been strongly urged against the right of the patentee to surrender the old patent, and take in his name a reissued one, without the assent of a third person to whom the patentee had previously passed an interest in the patent, either as grantee or licensee, that by such surrender and reissue the rights of such third person would be injuriously affected; that he would be deprived against his will by the act of the patentee of rights under the old patent, which he had purchased, and that no construction of the law relating to the surrender of patents, should be adopted, which would produce so unjust a result. It is well known that in the most important patents which have been issued, vast interests have been transferred to grantees and licensees, which interests may be injuriously affected, provided this view taken of the case by the defendant, is well founded. We have, therefore, given it the most attentive consideration.

We adopt the rule laid down by Judge Story, in the case of Woodworth v. Stone [Case No. 18,021], that it is not in the power of the patentee, by a surrender of his patent, to affect the rights of third persons to whom he had previously passed his interest in the whole or a part of the patent, without their consent. This consent may be manifested, either by joining in the surrender with the patentee, or by previously authorizing it, or by subsequently ratifying or approving it. And taking advantage and benefit of it would be a ratification. And when so consented to, the rights of the party so consenting, in and to the old patent, are forever gone. And it may be considered as a sound and settled principle that a person to whom the patentee has passed his interest in a part of the old patent, upon the surrender of the same by the patentee, and obtaining a reissued patent, is entitled to the same right under the reissued patent that he had to the old one. The patentee by taking a reissue can not deprive him of the same right to it that he had to the old one, if he wishes to take benefit of such right. Woodworth v. Hall [Id. 18,016]. And when he does take advantage and benefit of the reissued patent, he consents to give up, and does give up, the right which he had under the old one.

It does not follow from this, however, that because a third person to whom a patentee has passed his interest in a part of a patent, is entitled to the same right to a reissued patent that he had to the old one, that he is compelled to take under the reissued one, and thereby be compelled to give up the right which he had under the old one. If he was, his right might be injuriously affected without his consent. If he was so compelled, a grantee under an old patent, of an exclusive territorial right, would be forced, without his consent, to give up any amount of damages which he might be entitled to under the old patent, for a violation of right secured to him by that patent. And it might so happen that the old patent surrendered was a valid one, and that the reissued one was invalid; or that the rights secured by the former were important, while the rights secured by the latter were of little consequence.

To determine the question then, whether the rights of a third person, to whom a patentee had previously passed his interest, in a part of a patent, can be affected without his consent by the surrender of the old patent, by the patentee alone, and the taking of a reissued one, it is necessary to determine whether, after such surrender and reissue (both the surrender and reissue being valid) such third person has the same rights under the old patent, if he chooses not to take advantage of the surrender and the reissue, that he had to that patent before such surrender and reissue. If he has, then it will follow that by the surrender and the reissue his rights have not been injuriously affected; and, consequently, that there can be no valid objection to the same. It is insisted by the defendant that one right to an invention, in favor of one person under a reissued patent, and a different right to the same invention in favor of another person under the original patent, can not exist at one and the same time.

When a patent is granted, certain exclusive rights are secured, or purported to be secured to the inventor. The object of the reissue is to secure greater rights than were actually secured by the first patent. The subject of both patents is the same invention, and the object of both patents is to secure rights in the same. This is the only object in both. A less right is, or may be, secured in the invention by the first patent. A greater right is, or may be, secured to the same invention by the reissued patent. It is objected, if the person to whom the patentee has passed his interest in a part of the patent, can hold the right so passed under such patent, after the same has been surrendered by the patentee and a reissued one obtained, and the patentee at the same time can hold the rights not so passed to such person, under and by virtue of the reissued patent, that one right to an invention may exist in one person in one part of the United States, and a different right to the same invention may exist in another person, in a different part of the United States: the one right evidenced by one patent, with the transfer of the rights therein, and the other right evidenced by another patent; that there would be two or more patents to secure the different rights which different persons might have to the one whole invention, and that this would not be in accordance with the patent laws of the United States, but directly opposed to the same; that such laws authorize only one patent for one whole invention.

The object of a patent, is to secure rights to an invention throughout the whole United States. We can discover no good reason why a portion of the whole invention, for a particular portion of the United States, may not be secured by one patent, and the remaining portion of the invention, or what is claimed in it, for the residue of the United States, be secured by another patent. These two patents would in effect constitute together but one patent for the whole invention for the whole United States. Two patents for separate parts, the separate parts together comprehending only the whole, would in effect be but one patent for the whole; no more than two separate deeds, for two separate sections of one whole lot of land, would be in effect more than one deed for the whole lot. No more would be secured by the two patents, than is authorized by law to be secured, or than could be secured, by one. The two, in effect, would constitute but one.

The patent laws of the United States expressly authorize different claims of right to the same invention to be secured to different fractional or territorial owners or claimants. By section 7 of the patent law of 1837, it is among other things provided, that when any patentee shall have, through inadvertence, accident or mistake, made his specification of claim too broad, claiming more than that of which he was the original or first inventor, some material and substantial part of the thing patented being truly his own, that the owner of a sectional interest in the patent, may make disclaimer of such parts of the thing patented, as he shall not claim to hold by virtue of the patent and transfer to him, stating therein the extent of his interest in the patent. Which disclaimer shall thereafter be taken and considered as a part of the original specification to the extent of the interest which may be possessed in the patent by the disclaimant, and by those claiming by or under him, and to no greater extent. The patentee may not wish to make a disclaimer. He is authorized to do it, but is not compelled to do it. If he does not do it, his patent may be void for claiming too much. The owner of a sectional interest, however, can make a disclaimer for his sectional interest, which is to be taken as a part of the original specification, for the section owned by him, and no greater extent. After such disclaimer a different claim of right is secured to the disclaimant, the owner of a sectional interest, from what is purported to be secured to the patentee, the owner of the remaining interest; different claims of right in the same invention are secured to different sectional owners; there are two specifications for the same invention, one making one claim or right to an invention, for one section of country, and the other making another and different claim of right to the same invention, for another section of country. In ef-

fect it makes two patents out of one, one securing a claim of right to one person, and the other securing a different claim of right to another person. This is expressly authorized by the patent law.

It is to be inferred from the case of Woodworth v. Stone [supra] that Judge Story was of the opinion already indicated. That case was upon the familiar Woodworth patent. The original patent was granted to the inventor for fourteen years from the 27th day of December, 1828. It was subsequently renewed by the commissioner, in favor of the administrator of the inventor for seven years from the 27th day of December, 1842. It was further extended by act of congress for seven years from the 27th day of December, 1849. On the 8th day of July, 1845, the administrator surrendered the patent and obtained a reissued one. The history of the patent, as appears by various reports, in which the rights of parties under it were in controversy, shows, that previous to the surrender and reissue, various and important rights under the original patent had been transferred to various persons in different parts of the United States. The supplemental bill was upon the reissued patent, and one to whom a right previous to the surrender had been passed, in a territory in which the claimed violation took place, was made a party with the administrator. No one had joined in the surrender with the administrator. Exception was taken that the surrender and reissue were invalid, that the owner of the territorial right, who, with the administrator, was made a party to the bill, had not joined the administrator in the surrender. The supplemental bill, which was founded upon the sufficiency of the surrender and the reissued patent, was sustained. The judge holding that, by becoming a party to the supplemental bill, such owner of a territorial right ratified the surrender. The reports of other cases show that when this case was before Judge Story, he knew that there were other persons, in various parts of the United States, who had rights under the original patent, and who had not joined in the surrender, and whose rights would be affected by the surrender, against their consent, if they should not agree to it, provided he held the surrender good, and provided, also, they could not hold under old patent.

When, therefore, he held the surrender good and valid, and decided that "it was not in the power of the patentee, by a surrender of his patent, to affect the rights of third persons, to whom he had previously passed his interest, in the whole or a part of the patent, without their consent," he must have been of the opinion that notwithstanding such surrender and reissue, such third persons could hold under the old patent, if they should choose, for otherwise their rights would be injuriously affected without their consent.

With this view of the case, the exception

taken by the defendant to the sufficiency of the complainants' bill, must be overruled.

[Subsequently a provisional injunction was issued in favor of the complainants. Case No. 11,330.]

[For other cases involving this patent, see note to Potter v. Whitney, Case No. 11,341.]