McNAMER REALTY CO., Respondent, v. SUNBURST OIL
& GAS CO., Appellant.

(No. 5,925.)

(Submitted May 13, 1926.  Decided May 25, 1926.)

[247 Pac. 166.]

*Oil and Gas Leases—Cancellation—Failure to Pay Delay
Rental—Nature of Action—Removing Cloud upon Title—
Subleases—Assignment—Obligations of Assignee—Forfeitures
—Reformation of Instruments—Equity—Findings — When
Conclusive.*

Oil and Gas Leases—Cancellation—Breach of Covenants—Expiration
of Lease—Moot Question—Appeal—When not Subject to Dismissal.
1. In an action to have an oil and gas sublease declared void
and forfeited for failure of the sublessee to make payment of
amount stipulated to be paid upon omission to commence drilling
operations within the time required, and to remove an apparent
cloud upon the sublessor's title, the appeal will not be dismissed
upon the alleged ground that the term fixed in the instrument had
expired and the questions presented had therefore become moot.

Same—Cancellation—Removing Cloud upon Title—Equity.
2. An action to have an oil and gas lease declared terminated
and canceled of record for failure of the lessee to commence drill-
ing operations or make the stipulated payment in lieu thereof,
is one in equity and falls within the provisions of section 8733,
Revised Codes, authorizing cancellation to remove a cloud upon title.

Same—Removing Cloud upon Title—Burden upon Plaintiff to Show
What.
3. In an action of the nature of the above (par. 2), the burden
rests upon plaintiff to make a *prima facie* showing of a written in-
strument outstanding and of record, apparently valid on its face,
but in fact invalid, which, if not canceled, will injuriously affect
him.

Same—"Assignment"—"Sublease"—Definition.
4. An "assignment" of an oil and gas lease carries the whole
interest of the lessor, whereas an instrument whereby a lessee
grants an interest less than his own, reserving for himself a
reversion, constitutes a "sublease."

Same—Sublease—Assignment—Rights of Parties—How Determinable.
5. Where one holds as assignee of an oil and gas sublease his
rights and liabilities in an action seeking its termination must be
determined from it, and not from the original lease to the sub-

1. Dismissal of moot appeals, see note in 5 Ann. Cas. 626. See,
also, 2 R. C. L. 169.
2. See 4 R. C. L. 486.
4. See 16 R. C. L. 825.

[76 Mont. 332.]

lessor, there being neither privity of estate nor privity of contract between him and the lessor; and the provisions of section 6764, Revised Codes of 1921, providing that whatever remedies the lessor has against the lessee may be enforced against an assignee of the lease have no application as between the original lessor and the assignee of the sublease, but do apply as between the assignee and the sublessor.

Same—Assignment of Sublease—Obligations of Assignee.
6. Where the assignee of an oil and gas sublease takes the property subject to rents, conditions and provisions of the original lease, in addition to those imposed by the assignor, he must discharge those obligations to save his rights.

Equity—Findings—When Conclusive.
7. In equity cases, the supreme court will not disturb findings within the issues unless the evidence preponderates against them.

Reformation of Instruments—Showing Required.
8. Where a contract is sought to be reformed, the party seeking reformation must establish a mutual mistake by clear, convincing and satisfactory proof to overcome the presumption that the writing contains the final agreement of the parties and expresses their real purpose and intent.

Oil and Gas Leases—Forfeitures Favored.
9. The general rule that forfeitures are looked upon in the law with disfavor does not apply where the instrument in dispute is an oil and gas lease.

Same—Cancellation for Purpose of Removing Cloud upon Title—Relief from Forfeiture—Equitable Rules Inapplicable.
10. The purpose of an action brought under section 8733, Revised Codes of 1921, to have an oil and gas lease declared void and terminated by the failure of the lessee to observe its conditions, is to clear the record of an apparent cloud in the shape of an instrument which has ceased to have any effect but still remains of record, and in such a case the equitable rules as to relief from a forfeiture are not applicable.

---

[1]   Appeal and Error, 4 C. J., sec. 2383, p. 577, n. 87.
[2]   Cancellation of Instruments, 9 C. J., sec. 6, p. 1160, n. 10. Mines and Minerals, 40 C. J., sec. 714, p. 1092, n. 82.
[3]   Mines and Minerals, 40 C. J., sec. 664, p. 1051, n. 85, 86.
[4]   Assignments, 5 C. J., sec. 1, p. 836, n. 1; p. 837, n. 4. Landlord and Tenant, 35 C. J., sec. 80, p. 988, n. 49; sec. 82, p. 990, n. 70, 71; p. 991, n. 90. Mines and Minerals, 40 C. J., sec. 738, p. 1109, n. 39.
[5]   Contracts, 13 C. J., sec. 485, p. 525, n. 37. Landlord and Tenant, 36 C. J., sec. 695, p. 1078, n. 77 New; sec. 1220, p. 369, n. 32, Mines and Minerals, 40 C. J., sec. 737, p. 1108, n. 35; sec. 748, p. 1116, n. 52; sec. 749, p. 1117, n. 56, 60 New. Reformation of Instruments, 34 Cyc., p. 988, n. 37.
[6]   Appeal and Error, 4 C. J., sec. 2869, p. 900, n. 96; sec. 2870, p. 901, n. 2.
[7]   Reformation of Instruments, 34 Cyc., p. 984, n. 34.
[8]   Mines and Minerals, 40 C. J., sec. 694, p. 1077, n. 60, 62.
[9]   Mines and Minerals, 40 C. J., sec. 708, p. 1087, n. 14 New.

6.   See 2 R. C. L. 204.
7.   See 23 R. C. L. 367.

*Appeal from District Court, Toole County, in the Nineteenth Judicial District; Wm. E. Carroll, a Judge of the Second District, presiding.*

ACTION by the McNamer Realty Company against the Sunburst Oil & Gas Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Mr. Homer G. Murphy* and *Messrs. Hurd, Rhoades, Hall & McCabe,* for Appellant, submitted a brief; *Mr. Murphy* argued the cause orally.

There is privity neither of contract nor of estate between the lessor and a sublessee, and, in consequence, sublessees are not liable to the lessor on the covenants of the lease. (35 C. J. 1002, 1003.) Under such circumstances the sublessee is not liable to the original lessor for the rent reserved in the original lease, unless the sublessee has assumed the obligation. (36 C. J. 379.) Unless Murray assumed the obligation to pay rent under the original lease, neither he nor appellant were liable therefor. The only provision in the sublease having reference to the covenants of the original lease is as follows: "Subject, nevertheless, to the rents, conditions and provisions therein contained." But this provision does not constitute an assumption of the covenants of the original lease. (*Cox* v. *Butts,* 48 Okl. 147, 149 Pac. 1090; *Pendleton* v. *Cowling,* 11 Mont. 38, 27 Pac. 386; *Lang* v. *Cadwell,* 13 Mont. 458, 34 Pac. 957.) Respondent at all times remained responsible for the delay rentals reserved in the original lease. (36 C. J. 378.) Thus it was incumbent upon the respondent to pay or tender to Bertha Zachor the sum of $160 on or prior to May 26, 1923.

Payment by appellant to Bertha Zachor extinguished the debt for rental owing under the original lease. (*Wolf* v. *Aetna Ind. Co.,* 163 Cal. 597, 126 Pac. 470; *Thompson* v. *Commercial Guano Co.,* 93 Ga. 282, 20 S. E. 309; *In re Strasburger,* 132 N. Y. 128, 30 N. E. 379; *Peck* v. *Ingersol,* 7 N. Y. 528; *Kedney* v. *Rohrbach,* 14 Daly (N. Y.), 54; *Lageman* v. *Kloppenburg,* 2 E. D. Smith (N. Y.), 126; *Graham* v. *Allsop,* 3 Ex.

186, 154 Eng. Rep. 809; *Martin* v. *Quinn,* 37 Cal. 55; Clark v. *Abbott,* 53 Minn. 88, 39 Am. St. Rep. 577, 55 N. W. 542; *Crumlish* v. *Central Imp. Co.,* 38 W. Va. 390, 45 Am. St. Rep. 872, 23 L. R. A. 120, 18 S. E. 456; *Bradley* v. *Lehigh Valley R. Co.,* 153 Fed. 350, 82 C. C. A. 426.)

Under equitable rules respondent is not entitled to a forfeiture. (*Harvey* v. *Benmo Oil Co.,* 272 Fed. 475; *Brunson* v. *Carter Oil Co.,* 259 Fed. 656; *Empire Gas & Fuel Co.* v. *Higgins Oil & Fuel Co.,* 279 Fed. 977; *Shaffer* v. *Marks,* 241 Fed. 139; *South Penn Oil Co.* v. *Edgell,* 48 W. Va. 348, 37 S. E. 596; *Edwards* v. *Iola Gas Co.,* 65 Kan. 362, 69 Pac. 350; *McKean Natural Gas Co.* v. *Wolcott,* 254 Pa. 323, 98 Atl. 955; *Lynch* v. *Versailles Fuel Gas Co.,* 165 Pa. 518, 30 Atl. 984.) To forfeit the assignment under the circumstances here presented would be abhorrent. It should be borne in mind that the payment of rental is a mere condition subsequent. (*Engel* v. *Eastern Oil Co.* (W. Va), 130 S. E. 491; *Mercer-Lincoln Pineknob Oil Co.* v. *Pruitt,* 191 Ky. 207, 229 S. W. 374; *Hickernell* v. *Gregory* (Tex. Civ. App.), 224 S. W. 691; *Fisher* v. *Crescent Oil Co.* (Tex. Civ. App.), 178 S. W. 905; *Smith* v. *Hoffman,* 56 Mont. 299, 184 Pac. 842; 1 Thornton Oil & Gas, 4th ed., sec. 99; *Ford* v. *Barton* (Tex. Civ. App.), 224 S. W. 268; *Texas Co.* v. *Curry* (Tex. Civ. App.), 229 S. W. 643), and only operative when the party in whose favor it is made "choose to avail himself of the condition." The estate does not *ipso facto* terminate. (*McKean Natural Gas Co.* v. *Wolcott, supra.*)

The right of forfeiture or re-entry is mere security for the rent, to be relieved against upon proper compensation.

*Mr. Louis P. Donovan,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On July 6, 1923, the McNamer Realty Company, a corporation maintaining offices at Shelby, in Toole county, com-

menced an action against the Sunburst Oil & Gas Company, a corporation with offices at Great Falls, in Cascade county, to have a certain recorded instrument, under which the defendant had theretofore been granted certain rights and privileges in an oil and gas lease from one Bertha Zachor to the plaintiff on lands in Toole county, declared "void, terminated and forfeited," and "for such other and further relief as to the court may seem equitable and just."

The complaint alleged that the defendant failed to either commence a well upon the lands described in the instrument or to make the payment in lieu thereof on or before May 16, 1923, and that, under the terms of its contract, all its rights thereupon terminated. The complaint then alleged that the plaintiff made written demand upon defendant for the release of record of said instrument and that the defendant refused to comply with such demand.

By answer the defendant denied that it was in default on May 16, 1923, and affirmatively alleged full compliance with the terms and conditions of its contract in accordance with the mutual understanding of the parties, but that by mutual mistake the contract was not drafted to express the intention of the parties. It further alleged that, under the facts and circumstances set out in the answer, plaintiff was not, in equity and good conscience, entitled to a forfeiture. It prayed for a reformation of the contract and that, if it was found to be in default, it be relieved from the forfeiture. Issue was joined by reply.

The cause was tried to the court without a jury upon the theory that it was an action in equity. The trial was commenced in February, 1925. On July 17, 1925, the court made and filed findings of fact in favor of plaintiff and against defendant on every issue presented, and, on these findings and the court's conclusions drawn therefrom, judgment was duly entered on October 29, 1925. From this judgment defendant has appealed.

Counsel for defendant make twenty-four assignments of error, which, however, are not separately argued or presented, but in lieu thereof counsel contend that the judgment is erroneous, by argument and authorities presented under the following heads: (1) Nature of the action; (2) relationship of the parties; (3) liability of the parties; (4) intention of the parties; (5) payment by defendant; (6) equity should not allow a forfeiture. The questions thus presented will later be taken up in the order above set out, but before doing so it will be necessary to briefly detail the facts and circumstances leading up to, and culminating in, the acquisition of title by the defendant and what thereafter transpired, as shown by the evidence adduced on the trial.

On May 26, 1921, the plaintiff obtained from Bertha Zachor, the owner, an oil and gas lease on 160 acres of land in Toole county, consisting of four government subdivisions of sections of 40 acres each. The term of this lease was fixed at five years "and as long thereafter as oil and gas is produced from the land," *etc.* In consideration of the demise the lessee agreed to deliver to the lessor one-eighth of all oil produced and a percentage of the net receipts from gas sold or used. The lease then provided that "if no well be commenced on said land within one year from date of this lease, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the First National Bank at Shelby, Montana,   *   *   * one hundred and sixty dollars ($160) which shall operate as rental and cover the privilege of deferring the commencement of the well for twelve months from date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively." This lease expressly granted the privilege of assignment in whole or in part, and provided that in case of a part assignment and the failure of the assignee to pay its "proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease in so far as it covers a part or parts of said lands upon which the said

lessee or any assignee thereof shall make the payments of said rentals." This lease was duly recorded. No well was commenced upon the lands during the first year, but the lessee duly deferred the time for commencement by payment of the required rental on or before May 26, 1922.

At some time prior to July, 1922, the plaintiff assigned the lease to Lucie B. McNamer, who was the secretary of the corporation and the wife of Bruce R. McNamer, its president. Thereafter one P. W. Murray was advised by Bruce R. McNamer, as agent for Lucie B. McNamer, that the lease, or a part thereof, was for sale and was assured that if he (Murray) could secure a purchaser for the lease on three of the four 40-acre subdivisions, with certain reservations, among which was a 2½ per cent overriding royalty, he could retain for his services all that he received over the sum of $5,000, and that Mrs. McNamer would assign to him one-half of one per cent of the overriding royalty thus reserved.

On July 5, 1922, after talking with McNamer over the telephone, Murray wired McNamer at Shelby from Great Falls, as follows: "Assign lease direct to me send royalty assignment rush abstract." In response to this message McNamer, within the next few days, placed in escrow with the First National Bank of Great Falls an instrument denominated an "assignment" from Lucie B. McNamer to Murray, which recited that she thereby sold, assigned, and transferred "all her right, title, and interest in and to" the three 40-acre subdivisions mentioned, but reserved to Lucie B. McNamer the overriding 2½ per cent royalty in all oil and gas produced from these lands, and shortened the expiration date of the lease on these lands from May 26, 1926, to May 26, 1925, thus shortening the lessee's term, in the absence of production, one year and ten days.

In addition to this instrument McNamer placed in escrow with the bank the original lease, a receipt for the 1922 rental, and an abstract of title. By letter accompanying the papers, McNamer advised the bank that Murray "had a deal on to sell" the lease for Lucie B. McNamer and that Murray or his representatives, should be permitted to examine the papers so de-

posited and receive the same on payment to the credit of Lucie B. McNamer, of $5,000. McNamer also wrote Murray, making it clear that no exclusive option or right to sell was granted, but that he reserved the right to dispose of the lease himself, and suggested that he had knowledge of prospective purchasers.

This so-called assignment to Murray provided, in language similar to that of the original lease, that, if a well was not commenced on or before May 16, 1923, the rights of Murray should terminate, unless on or before that date he should pay or tender to Lucie B. McNamer, or to her credit in the First National Bank of Shelby, the sum of $120, with like provision for further deferring drilling a well from year to year.

Thus armed with authority, Murray sought to sell the rights thus offered to the defendant company, and to this end interviewed C. L. Stevenson, its president, on the eleventh day of July, 1922, but asked more than the defendant cared to pay. He returned to the office of the defendant on the 12th and was then somewhat disconcerted to find Bruce R. McNamer in the office. Fearing that McNamer, to whom he had not communicated the name of his proposing purchaser, was there for the purpose of selling to defendant, he sought out Stevenson, and offered to assign his rights for $6,000. To this offer Stevenson finally agreed and caused defendant's check for that amount to be deposited in the First National Bank to await final closing.

Stevenson testified that, while in consultation with Murray, Murray would first talk with him and then with McNamer, and that, in his opinion, McNamer took part in closing the deal, though he did not hear what was said between McNamer and Murray. Murray's recollection was very hazy as to what took place between himself and McNamer at that time, though he was inclined to the belief that they talked over the deal. McNamer, however, denied that he had any conversation with Murray in defendant's office concerning the matter and testified that he did not know at that time that Murray was attempting to sell to defendant, and that he visited the office in connection with another matter.

340    McNamer Realty Co. v. Sunburst etc. Co.    [Mar. T. '26

[76 Mont. 332.]

Having agreed to purchase, Stevenson turned Murray over to Homer G. Murphy, defendant's general counsel, with instructions to Murphy to satisfy himself as to the title and to draw the necessary papers for the transfer. Murphy testified that, at that time, he was introduced to McNamer by Murray, and discussed with him the details of the deal, and that McNamer advised him that the delay rental might be paid either to him or direct to Bertha Zachor, and that, if the latter course was followed, the defendant might pay the full amount due from the original lessor, or $160, and that, in such event, the plaintiff would reimburse the defendant for the difference, or $40; that it was the clear understanding of the parties that any rental paid by the defendant went ultimately to Bertha Zachor as rental under the original lease. Murphy further testified that it was the understanding of the parties that the date for the payment of rental was changed from the 26th to the 16th in order to give the plaintiff time to make payment to Bertha Zachor, after defendant had made payment to it, or had defaulted, and in order that the default date should not be the same. As to this understanding on the part of the defendant, Murphy was corroborated by Stevenson.

McNamer, however, denied that he met Murphy in the defendant's office and denied that he then, or at any other time, had the conversation related. He admitted that he met Murphy while in Great Falls, but stated that the meeting took place at the Great Northern Depot the next morning when. they were both leaving the city.

On July 11th Murphy drafted an assignment from Murray and his wife to the defendant company and had it duly executed. This instrument recited that Murray acquired rights under assignment from Lucie B. McNamer, and contained no recitation as to payment of delay rental, but merely conveyed the rights acquired by Murray under the assignment, so-called, to him. Thereafter Murphy questioned the validity of Murray's title because of the assignment by the plaintiff to one of its officers and advised Murray that the title must be cleared. He drew a pencil cross across the face of the assignment he had

drawn, and told Murray that he would not be able to redraft the assignment on account of duties elsewhere, but that, when the title was cleared, he (Murray) could take the canceled draft to the office of Norris, Hurd & Rhoades, which firm at times performed legal services for the defendant, for a redraft.

Seemingly, without waiting to have the title cleared, Murray took the matter up with George Hurd on the evening of July 12th. Hurd called the defendant's office for the purpose of verifying Murray's statement that he was to draft the assignment, and, being assured that such was the wish of defendant company, drew an assignment from Murray to the company substantially following the draft made by Murphy, but reciting title in Murray through the plaintiff company. Hurd testified that Murray requested him to date the instrument the 14th, in order that it might follow a new transfer from plaintiff company to Murray, but this he refused to do, stating that his office never dated an instrument other than on the actual date it was drawn. Murray did not again visit Hurd's office until July 18th, when he and his wife appeared and acknowledged the instrument.

On the afternoon of July 12th McNamer employed Warren Toole, an attorney with offices at Great Falls, to draw the necessary papers for obviating the objections made by Murphy to the title, and then returned to his home. On the 13th Toole wrote McNamer to the effect that he had had a conference with Mr. Hurd and had been able to "iron out" the difficulty, and inclosed instruments modeled after the original transfer executed by Lucie B. McNamer to Murray and containing the same provision regarding delay rental payment to the maker of the instrument; the first from Lucie B. McNamer to the McNamer Realty Company, and the second from the McNamer Realty Company to Murray. While Toole testified that he drew the instruments on the 12th and mailed them to McNamer on the 13th with his letter of that date, both instruments are dated the 14th and were executed at Cut Bank on that date. On the 18th Toole again wrote McNamer that the executed instruments had been received, and that Mr. Hurd

had "approved" them, and that they had been placed in the bank. Refreshing his memory from his letters, Toole testified that he took the matter up with Hurd, and that it was Hurd's suggestion that a retransfer be made by Lucie B. McNamer, and that he took the instruments to Hurd for his approval before depositing them in the bank. This Hurd denied on the stand, contending that he did not represent the defendant in the transaction and his only authority was for the drafting of the assignment from Murray to defendant; that he knew nothing of what was done in the matter and had no conversation with Toole.

On July 18th Murphy, acting for defendant, went to the bank and was there met by both Murray and McNamer. The instruments included in the escrow were exhibited to him and he was given the opportunity to read them. He testified that he did not read the instruments carefully, but merely satisfied himself they were from the right parties and were properly executed. The deal was closed and the money paid over. Murphy further testified that he had sole charge of the matter for the defendant company and that he never knew of the explicit provision for the payment of delay rental contained in the instruments, until after May 16, 1923.

On May 11, 1923, no well having been commenced on the land, Murphy went to Shelby and endeavored to see some officer of the plaintiff company for the purpose of securing plaintiff's part of the delay rental due Bertha Zachor according to his understanding of the agreement between the parties, but without success, and thereupon deposited the full sum of $160 in the Shelby bank to the credit of Bertha Zachor. Shortly thereafter Bertha Zachor withdrew the money from the bank. This payment, Murphy contended, was in strict accordance with the understanding of the parties.

On May 18, 1923, Bruce R. McNamer, for the McNamer Realty Company, likewise deposited $160 in the Shelby bank to the credit of Bertha Zachor. He testified that at the time he did not know of the deposit made by defendant. This

amount was also accepted and checked out by Bertha Zachor, and it does not appear from the record whether she ever repaid the amount to plaintiff or whether it was later considered as payment of delay rental for the succeeding year. The day following this deposit, plaintiff made written demand upon defendant for the release of its rights and, on refusal, this action was commenced.

No well was ever commenced on the land, although Stevenson testified that the defendant made arrangements to drill the land and intended to do so, and that; except for the notice of forfeiture and commencement of the action, a well would have been commenced thereon in the latter part of 1923 or the early days of 1924. On May 16, 1924, defendant tendered to plaintiff the sum of $120 as delay rental for the succeeding year, which tender was refused.

The foregoing is a substantial outline of all the testimony, in which there is little conflict other than that indicated respecting the conversations had between Murphy and McNamer, and Toole and Hurd.

1. On April 12, 1926, plaintiff filed herein a motion to dis-
[1]   miss the appeal, based on affidavits, upon the ground that, since the term fixed in the instrument by which Murray acquired the rights he assigned to defendant, expired May 16, 1925, the questions presented by the appeal have become moot. If this position is correct, all questions determined by the trial court were then but moot questions, for its findings were not filed until July 17, 1925, and yet the plaintiff thereafter participated in the settlement of defendant's bill of exceptions, accepted plaintiff's brief, and filed its brief herein in reply thereto.

If the motion be sustained and the appeal dismissed, the judgment will be left to stand in full force and effect, although there might be merit in defendant's contentions that there was no default, that it should be relieved from the forfeiture declared, and that, by the questioning of title in the action

344    McNamer Realty Co. *v.* Sunburst etc. Co.    [Mar. T. '26

[76 Mont. 332.]

commenced, plaintiff extended defendant's term for the period necessary for the disposition of the case.

As hereinafter shown, this is an action in equity, and, if defendant is entitled to equitable relief under the showing made and still has rights under the transfers mentioned, it should not be denied such relief by a formal declaration that its term had expired, made without consideration of the matters presented in support of its contentions. For these reasons the motion to dismiss will be overruled and we will proceed to the merits of the matters presented on the appeal.

2. Plaintiff's complaint sought only to have the instrument [2] under which defendant claims declared void and delivered up or canceled of record, which brings it squarely within the provisions of section 8733, Revised Codes of 1921; it does not seek to recover the statutory or other damages provided for in section 6903, Revised Codes 1921, and all relief sought by the plaintiff is strictly equitable in its nature. The action, therefore, differs from that considered in *Solberg* v. *Sunburst Oil & Gas Co.,* 70 Mont. 177, 225 Pac. 612, and which was brought under the provisions of section 6903 above.

This, then, is an action in equity, and, in determining the respective rights and liabilities of the parties, equitable rules and principles must be applied. (*Hicks* v. *Rupp,* 49 Mont. 40, 140 Pac. 97; *Kersten* v. *Coleman,* 50 Mont. 82, 144 Pac. 1092.)

The burden rested upon the plaintiff, in the first instance, [3] to make a *prima facie* showing of a written instrument outstanding and of record, apparently valid on its face, but, in fact, invalid, which, if not canceled, will injuriously affect it (*Hicks* v. *Rupp,* above; *Heavilin* v. *O'Connor,* 61 Mont. 507, 202 Pac. 1115; *Hammond-Dodson Co.* v. *Slattery,* 67 Mont. 489, 216 Pac. 323.)

3. As to the relationship of the parties: It is clear that the instrument executed by Bertha Zachor to plaintiff is a lease, but in the nature of an optional contract, as it does not require the lessee to perform any act nor give rise to a right of action on default under its terms, but merely grants to the lessee the

privilege of drilling, paying, or terminating the lease at its option. (*Corey* v. *Sunburst Oil & Gas Co.,* 72 Mont. 383, 233 Pac. 909; *Solberg* v. *Sunburst Oil & Gas Co., ante,* p. 254, **[4]** 246 Pac. 168.)   The transfer from Murray to defendant is a simple assignment of his rights, but the instrument by which he acquired those rights, while denominated an "assignment," is, in fact, a sublease of the property therein described, for thereby the plaintiff retained a reversionary interest in the lease as to the land described in the so-called assignment by reserving an overriding royalty and one year and ten days of the exploratory period or term of the lease thereon.

An "assignment" is defined as "a transfer of title or interest by writing, as of a lease, bond, note or bill of exchange" (Webster's New Int. Dict.), and carries the whole interest of the assignor (*Brown* v. *Crookston A. Assn.,* 34 Minn. 545, 26 N. W. 907; *Potter* v. *Holland,* 19 Fed. Cas. 1154, No. 11,329, 2 Bl. Com. 326). Thus "an assignment of a lease" signifies a parting with the whole term (*Craig* v. *Summers,* 47 Minn. 189, 15 L. R. A. 236, 49 N. W. 742; *Bedford* v. *Terhune,* 30 N. Y. 453, 86 Am. Dec. 394), whereas, no matter by what name it is called, if by an instrument in writing a lessee grants an interest less than his own, retaining for himself a reversion, it is a sublease and not an assignment of his lease (*Shannon* v. *Grindstaff,* 11 Wash. 536, 40 Pac. 123; *Davis* v. *Vidal,* 105 Tex. 444, 42 L. R. A. (n. s.) 1084, 151 S. W. 290; 42 R. C. L. (n. s.) 1084; 35 C. J. 990, 991, and cases there cited).

By the assignment from Murray, defendant stands in his **[5, 6]** shoes, and therefore held under a sublease and as undertenant of the plaintiff, who held a reversionary interest in the sublet premises, and there was, therefore, neither privity of estate nor privity of contract between the defendant and Bertha Zachor (36 C. J. 379, and cases cited), and the rights and liabilities of the sublessee, this defendant, must be determined from the sublease (Thompson on Real Property, secs. 1372, 1373; *Stewart* v. *Long Island R. Co.,* 102 N. Y. 601, 55 Am. Rep. 844, 8 N. E. 200; *Crosby* v. *Horne,* 45 Minn. 249, 47 N. W. 717; *Moline* v. *Portland Brewing Co.,* 73 Or. 332, 144 Pac. 572;

*Kimbriel* v. *Montgomery*, 28 Okl. 743, 115 Pac. 1013). As defendant is not an assignee of the original lease, the provisions of section 6764, Revised Codes of 1921, providing that whatever remedies the lessor has against the lessee may be enforced against an assignee of the lessee, have no application as between the lessor, Bertha Zachor, and the defendant, but apply as between the plaintiff and defendant as assignee of the sublease.

However, while under such a lease the lessee, and consequently the sublessee, incurs no personal liability, he is required to perform certain acts if he would prevent the termination of the lease. If he fails to perform, his rights terminate, unless he makes the payment provided for, and the right of forfeiture on default may be said to be a remedy which may be enforced by the sublessor against his sublessee or his assignee. (*Bell* v. *Kilburn*, 192 Ky. 809, 234 S. W. 730; *Mercer etc. Oil Co.* v. *Pruitt*, 191 Ky. 207, 229 S. W. 374.)

This sublease provides, first, that the sublessee takes "subject, nevertheless, to the rents, conditions, and provisions contained in the original lease, and also to the following provisions"—which later provisions are for the payment of the overriding royalty to plaintiff in the event oil or gas is obtained and the provisions heretofore quoted for delay rental, while the corresponding provisions of the original lease are for the payment of delay rental to Bertha Zachor by the plaintiff and the payment to her of her reserved royalty.

It is argued on behalf of defendant that the provisions of the sublease do not require the payment of the delay rental to Bertha Zachor, and the extent of defendant's liability in this regard, in order to keep its rights alive, is the payment of $120 per year to either Bertha Zachor or plaintiff, as it understood the contract to be drawn. It is true that defendant could not be required to make the payment to Bertha Zachor, but its situation was analogous to that of a purchaser who buys a tract of land subject to an existing mortgage; there the purchaser would not be liable to the mortgagee for the mortgage debt, but, if he would save his property from sale or foreclosure, he must satisfy the mortgage debt. So here, if defendant took the

property subject to rents, conditions, and provisions of the original lease, it would be required, if it would save its rights, to discharge those obligations.

Defendant would not contend that, if it could enter upon the lands, drill and produce oil, and thereafter hold possession by merely paying the overriding royalty without paying the royalty reserved to Bertha Zachor, and, if it was induced to enter into a contract by which it assumed the payment of the rental reserved in the original lease, it could no more preserve its rights by the payment of the rental reserved to the plaintiff without paying the rental reserved to the original lessor than it could discharge its obligation to pay royalty by merely paying the royalty mentioned in its sublease. There can be no logical distinction drawn between the two items mentioned in the same phrase. As by its terms the original lease was assignable in whole or in part, and, if a part assignment was made, a default as to one part would not affect the rights of those holding the remainder, the contention that the obligation as to rental under the original lease would be discharged by the payment to Bertha Zachor of defendant's proportionate part of the delay rental required under the original lease, seems unreasonable.

It may seem unreasonable that after paying the plaintiff $5,000 for the sublease, defendant should be required to pay to it a delay rental in case of failure to drill, in excess of the delay rental plaintiff was required to pay the original lessor; but, unless the contract be reformed, such are its terms, and we cannot protect the defendant from the condition imposed by a contract which it has entered into, nor make a new contract for the parties because their contract seems unreasonable.

It may seem to us that the intention of the parties in fixing the delay rental at a sum which would bear the same relation to the whole delay rental fixed in the original lease that the acreage bears to the total acreage leased to plaintiff, was to require the plaintiff to pay its proportionate share of the delay rental under the original lease; but such is not the wording of the contract, and it must be borne in mind that the plaintiff did not assign a three-fourths interest in the lease, but sublet

certain lands and reserved substantial rights in and to that portion of the lease covered by its sublease.

It may well be that the plaintiff had in mind that, by so subleasing, it would accomplish a purpose it could not itself carry out; *i. e.,* the commencement of a well on the premises within the year, and, if this were done, it would reap substantial reward, while a delay in commencement would work an injury to it which should be compensated by delay rental in addition to the delay rental to be paid to the original lessor.

4. Such being the condition of the contract on its face, we come to the discussion of defendant's fourth head, "Intention of the Parties," under which it is asserted that the court erred in refusing to reform the contract.

Mr. Murphy testified positively as to his understanding that it was the intention of the parties that the provision as to delay rental was merely to cover defendant's proportionate share of the total rental and that this payment might be made to either the plaintiff or to Bertha Zachor, which understanding was based upon the direct statement of Bruce R. McNamer. However, McNamer flatly denied that he ever made the statements attributed to him, and on this conflicting evidence the court [7] found in favor of the plaintiff. The rule in this jurisdiction that in equity cases this court will not disturb findings within the issues, unless the evidence preponderates against them, is too well established to require numerous citations; the recent cases of *Portland Cattle Loan Co.* v. *Featherly,* 74 Mont. 531, 241 Pac. 322, *Security State Bank* v. *McIntyre,* 71 Mont. 186, 228 Pac. 618, and *Warren* v. *Senecal,* 71 Mont. 210, 228 Pac. 71, will suffice.

While Mr. Murphy's testimony was convincing as to his understanding of the intention of the parties which was contrary to the expressed conditions of the contract, he was the legal representative and agent of the defendant in closing the deal and had the opportunity of carefully reading the sublease and determining whether its provisions met with his approval and embodied that intention as he understood it; but his testi-[8] mony was that he did not do so, and, if the contract could

be reformed, the duty rested upon the defendant to establish a mutual mistake by "clear, convincing and satisfactory" proof (*Humble* v. *St. John,* 72 Mont. 519, 234 Pac. 475, and cases cited) to overcome the presumption that the writing contains the final agreement of the parties and expresses "their real purpose and intent" (*Hinerman* v. *Baldwin,* 67 Mont. 417, 215 Pac. 1103; *Wheeler* v. *James,* 70 Mont. 37, 223 Pac. 900).

The controversy between Mr. Toole and Mr. Hurd is immaterial, as it does not appear that Mr. Hurd had authority to approve the instruments, whether he did so or not.

But, aside from Mr. Murphy's failure to carefully read the instruments under which defendant proposed to take title, it must be remembered that the contract was not between the defendant and the plaintiff direct, but between the plaintiff and Murray, and while it is apparent that Murray acted more as a broker or go-between in the transaction, the sublease was in fact made direct to him and by him merely assigned to defendant.

The final draft of the sublease contained the precise provisions of the original sublease from Lucie B. McNamer, executed some time prior to the defendant being known in the transaction, and therefore, while Mr. Murphy may have suggested matters which should have been incorporated in the sublease, his suggestion could not have caused the change of date for the payment of delay rental, and his only remedy at the time of closing of the deal was to refuse unless the sublease be changed to meet his views. No attempt was made to show that the sublease to Murray did not conform to his understanding of his agreement with the plaintiff.

5. It is finally contended that defendant should, in equity, be relieved of the forfeiture declared. This contention is based, first, upon the assertion that the defendant was to act merely as a conduit to passing the delay rental of $120 on to Bertha Zachor and was not in any manner liable for the delay rental provided in the original lease, and, further, that, having paid in excess of that amount to Bertha Zachor within time, defendant substantially complied with the terms of its contract.

This contention falls with the court's refusal to reform the contract; had the contract been reformed to meet the understanding of defendant, such contention would be meritorious. Since the court refused to reform the contract, under its terms, as heretofore pointed out, the defendant was required, if it would save its rights, to meet the requirements in this regard of both the original lease and the sublease. This it did not do, and its failure to make payment to the plaintiff under the terms of the sublease effected a termination of its rights according to the explicit agreement of the parties.

Counsel cite authorities to the effect that a short delay in making payment under a lease for which a substantial consideration has been paid, should be relieved against in equity, but here it was not a matter of a short delay; the defendant wholly failed to make the payment which resulted in the termination of its rights and never intended making such payment other than for the benefit of Bertha Zachor. It must be re-[9] membered, also, that the instrument in dispute here is an oil and gas lease, under which the general rule that forfeitures are looked upon in the law with disfavor gives place to the rule that, because of their nature, forfeitures under such leases are favored in the law (*Solberg* v. *Sunburst Oil & Gas Co., ante,* p. 254,. 246 Pac. 168).

Counsel further argue that, under the circumstances of this [10] case, a forfeiture should not be decreed by a court of equity. In this counsel proceed under an erroneous assumption that this is an action for the cancellation of an instrument. Under the statute and under the complaint, the sublease is considered as a void instrument, only apparently valid on its face, and the relief sought is the clearing of the record or paper title of an apparent cloud existing because an instrument which has ceased to have any effect by reason of its termination still remains of record.

The court was asked, not to declare a forfeiture, but "to ascertain whether a completed forfeiture existed, and, if so, to remove the cloud." (*Merk* v. *Bowery Mining Co.,* 31 Mont. 298, 78 Pac. 519.) Under the facts and circumstances shown,

as heretofore discussed, the equitable rules as to relief from a forfeiture cannot be applied.

From the foregoing discussion of all points raised by defendant, it is apparent that no substantial error was committed by the court, and the judgment must therefore be affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.